MARY E. HATCH v. LURA E. HATCH'S ESTATE.

*Infant, Ratification of Contract by. Parent and Child. Administrator. Offset. Costs. R. L. s. 2127.*

1. A contract by which a debt is incurred by an infant may be ratified by his express promise to pay it, made after he becomes of age; and his acts and declarations, made or performed after he has attained his majority, with deliberation and knowledge of his rights, may be of a character to constitute perfect evidence of such ratification.

2. When a person on attaining his majority promises to pay a debt which he had contracted during his infancy, in the absence of any proof to the contrary, it would seem to be the natural presumption that he was aware of his rights.

3. A widowed mother cannot recover of the estate of her deceased daughter for an organ bought at the daughter's request made when she was about sixteen, and while living at the mother's home in the relation of parent and child, and there was no express promise to pay and nothing to distinguish it from the ordinary case where a parent indulges the request of a child.

4. Nor can such mother recover for nursing at her own home her daughter in sickness, although she was more than eighteen years old, but constituted one of the mother's family, and there was no understanding that charges should be made; nor for the payment of a physician's bill incurred by the daughter's illness; nor for the burial expenses of the deceased daughter,—as these last belong to the administrator to pay.

5. OFFSET. Under the statute—R. L. s. 2127—in an action against the estate of the deceased person, claims in offset are limited to such as existed at the time of the death of the intestate; otherwise, the due course of distribution would be altered.

Hatch *v.* Hatch's Estate.

6. The plaintiff's husband devised a farm in unequal portions to her and to her two minor children, her son and the defendant's intestate. After the death of the husband, the mother rented the farm for several years on the shares, but she and the children lived thereon out of a common fund. The three constituted the family; and there was no understanding that any separate account should be kept, or separate contribution made towards their common support except the expenses of the intestate when at school; *Held,* in an action against the estate to recover for money loaned the intestate to complete her education, that the rent of the farm could not be allowed in offset.

7. The court declined to change the decision of the court below, in refusing to recommit the report,—on the ground that the record did not show error.

8. COSTS. On an appeal from the decision of commissioners, where their allowance was greatly decreased, the costs were properly apportioned.

APPEAL from the allowance of commissioners. Book account. Heard on the report of the auditor, September Term, 1886, Chittenden County, TAFT, J., presiding. Judgment that there be allowed the plaintiff the item of $720.20 and interest, it being for the expense of the intestate's schooling ; that there be disallowed of the plaintiff's account, items $165.41 and $172.38 ; and that there be allowed of the defendant's claim in offset of $399.64, and interest.

The defendant filed a motion to recommit the auditor's report. Motion overruled and both parties excepted to judgment below.

The auditor found, in part :

Benjamin B. Hatch, husband of the plaintiff and father of the intestate, Lura E. Hatch, died in the spring of 1872, leaving an estate consisting of a farm of 140 acres in Jericho, appraised at $8,000 by commissioners on his estate that year, and stock and other personal property used on the farm, appraised at the same time at $1,550 also certain notes against other parties.

The farm has gradually decreased in value since 1872, and is now worth from $3,500 to $4,000.

He left a will by which he gave to two older daughters by a former wife $800 each, which legacies were paid out of the personal property and the residue of his estate he gave in the following proportions : three-ninths to his widow, the plaintiff ; two-ninths to his daughter Lura ; and four-ninths to his son

11

Fred, Lura and Fred being children of the plaintiff, and Fred being younger than Lura.

Plaintiff had a homestead of $500 value in the farm and also dower therein, diminished by the value of the homestead, as the will did not profess to cut off homestead or dower.

After his death, his widow leased the farm on shares and lived thereon with her two children, Lura and Fred, until Lura's death, which occurred on the farm July 5, 1877, except a few months one fall, when they all lived in Montpelier, and except that Lura was away at school at Montpelier a part of the time. Since Lura's death, the plaintiff has carried on the farm with the aid of her son Fred. Lura became eighteen years of age December 15, 1874. As long as she lived she continued a member of her mother's family, her mother, her brother, and herself constituting the family, with no arrangement or understanding among themselves, that any separate account was to be kept in respect to, or any separate contribution should be made towards, their common expenses of living and support suitable to a family of their means and standing, with the exception of the arrangement for Lura's schooling, hereinafter stated, and no separate account was kept, or intended to be kept, or any charge made, or intended to be made, in respect to either their expenses or the income of their respective shares of the farm and other property. They lived together in one common home, mother and two minor children, as one family and one common fund. Their maternal and filial relations continued as they had existed from the children's early childhood, and each party contributed towards the common support of the family as a mother and her minor children ordinarily do, according to their ability and station in life, the mother directing and controlling their affairs. And the farm and its products, and the other property left by Mr. Hatch, were used, under the management of the plaintiff, for the common support of the family, including clothing and other incidental expenses.

When Lura became of age in December, 1874, no change was made in their mutual relations and understandings, and no express contract of any kind was entered into between Lura and her mother in regard to support or service, but matters went along the same as theretofore until her death.

In the spring of 1873, when Lura was sixteen years old, she expressed the wish to go to a higher school than the ordinary common district schools which she had been attending, and acquire a thorough education, which she could only obtain at the higher academies or seminaries, and she asked her mother to be allowed to do so. Her mother said she could not afford to pay the expenses incident to such schooling out of the common fund or her own money, and Lura told her that she was willing that all such expenses should be paid eventually out of her own share of the property, and her mother thereupon consented that she might go to school as she desired, and agreed to advance the money for the expenses thereby occasioned, with the understanding that Lura should repay her therefor out of her own property. This arrangement, however, was not understood to change the general relation of one united family which had previously existed, nor the understanding and practice in respect to expenses and income above stated, except so far as concerned the expenses incident to her going away to school. Lura, when not away to school, was still to continue a member of the family, was to return home during her vacations, and they were all to continue to bear the same maternal and filial relations to each other as before except that the expenses incident to such higher education were to be paid eventually out of Lura's share.

Acting under this agreement, Lura attended one term in the spring and summer of 1873 at the academy at Jericho Center, where the family resided, remaining and living at home during that time. And on August 25, 1873, she went to Montpelier, and became a pupil of the Green Mountain Seminary there, and attended that school, with the exception of one term and

probably a few weeks besides, until about the middle of March, 1877, when, her health failing, she returned to her mother's house in Jericho, and continued seriously ill there until her death, July 5, 1877. She used to return home at the vacations during this period, and spent at home the whole term and other parts of terms when she did not attend the seminary, and continued in all respects a member of the family, bearing the same family relations to her mother and brother as before. * * * She was well and faithfully nursed by her mother during her last sickness, and a physician was employed for her whose bill during such sickness, charged to and paid by the plaintiff, amounted to $38.50, and the physician had a bill for attending her in 1876, amounting to $1.50. This the plaintiff also paid, and the aggregate with interest from July 1, 1877, she claims to recover in this action. If the plaintiff is entitled to recover for such nursing and care of her daughter, she is entitled to recover $5 per week amounting to $70, with interest from July 1, 1887, and so also as to the physician's bill of $40 with interest from the same time. The auditor is unable to find that there was any express contract by Lura to pay any of the expenses incurred by her mother for her, except those incident to her schooling at Montpelier. * * * Plaintiff had no other source of income except the farm and personal property connected therewith, belonging to Benjamin B. Hatch's estate, in which she owned such interest as she derived by the will, and the law bearing upon the above recited facts.

Edgar H. Lane was appointed executor of Mr. Hatch's will, and acted in that capacity until September 10, 1880, when he settled his account with the Probate Court, and resigned his trust. During his executorship he allowed the plaintiff to manage the farm and stock, and take the income and products thereof. It required $598 to balance his account; that is, the debts owing by the estate, and the expenses of administration, and allowances to the widow, exceed the money he collected

by that sum; and in settling his account which was approved by the court and unappealed from, he treated that sum as rent received from the plaintiff for the farm during his executorship, and she paid him that sum to enable him to balance his accounts.

The auditor finds that in point of fact the rent or use of the farm and stock, which the plaintiff so occupied and had the benefit of was worth, after allowing the plaintiff towards the value of the property of the $598 which she furnished aforesaid, $225 per annum after July 5, 1877, when Lura died, until the time of this hearing before the auditor, April 3; 1886, in all say eight and three-fourths years, and that in some way or form of accounting the estate of said Lura is entitled to recover $33.33 per annum of that time from the plaintiff. The other facts are sufficiently stated in the opinion.

*Wilbur & Wolcott*, for the plaintiff.

Judgment was properly rendered for the plaintiff to recover the $720.20 advanced for Lura's education at the academy. The plaintiff was under no legal or moral obligation to furnish it from her small property after her daughter had received good advantages at the common school. The express promise of Lura to repay it was upon adequate consideration, and the contract was binding between the parties. It appears that Lura was desirous of obtaining, among other accomplishments, a musical education, and the mother purchased the organ at " her request." These agreements were fully ratified by the intestate after she became of age.

If a minor makes a contract that is simply voidable, and does not disaffirm it within a reasonable time after becoming of age, the contract becomes ratified. Lura used and treated the organ as her own for more than two and a-half years after attaining her majority. Tyler, Inf. 80, 83; 1 Chitty Cont. 11th ed. 216.

In a case where the minor contracted to work for the defendant one year, and he continued in his service one month after he became of age, it was held to constitute a ratification. *Forsweth* v. *Hastings*, 27 Vt. 646.

The infant must disaffirm his contract within a reasonable time on coming of age, or he is bound by it. REDFIELD, J., in *Richardson* v. *Boright*, 9 Vt. 368. See *Bigelow* v. *Kinney*, 3 Vt. 353. *Fletcher* v. *Sumner*, 12 Vt. 28; *Baxter* v. *Bush*, 29 Vt. 465.

Taking a note against a third person by a minor for his work, and holding it eight months after he became of age, is a ratification. *Delano* v. *Blake*, 11 Wend. 86.

Where an infant purchased property and executed his promissory note therefor, and retained the property two years after he became of age, such retention was held to be a ratification. *Boyden* v. *Boyden*, 9 Met. 519.

The plaintiff should be allowed for nursing the intestate, and for what she paid the physician. These were for necessaries, and there is an implied contract that Lura would pay them. *Doane* v. *Doane*, 46 Vt. 485.

A father holding a fund under a will for the support of his infant child, and able to maintain and educate her, may be allowed a reasonable sum for her support and education. *Kendall* v. *Kendall*, 60 N. H. 527.

On the death of the father a surviving mother is not under obligation to support her minor child, if the child has an estate of her own, or is able to earn a livelihood. *Englehardt* v. *Yung*, 76 Ala. 534; *Mowbry* v. *Mowbry*, 64 Ill. 382; *Wilkes* v. *Rogers*, 6 Johns. 590; 2 Fla. 360; 50 N. H. 505.

A widow is not bound to support her children unless of sufficient ability, and there is no finding in this case that plaintiff is. *Riley* v. *Jameson*, 3 N. H. 29; Reeves Dom. Rel. 283, 286; Rev. Laws, s. 2822; Schoul. Dem. Rel. 319, 321; *Whipple* v. *Dow*, 2 Mass. 515; *Dawes* v. *Howard*, 4 Mass. 97.

The defendant's claim is not a proper offset in this suit. While the mother and children were living on the farm, no charges were made or intended to be made between them. There is no foundation for a claim for rents. *Clark* v. *Clark*, 2 New Eng. Rep. 213; 58 Vt. 527.

The account is a claim in offset, and not one that grows out of the contract in which the plaintiff's account accrued, but accrued to the defendant independently of it, since the intestate's death. The plaintiff is liable to pay it to the administrator. It is an asset. Rev. Laws, s. 2137; *Clark* v. *Clark*, *supra*; *Roberts* v. *Morgan*, 30 Vt. 319, 326.

An account due a party, which accrued before the death of the intestate, must be allowed and be paid *pro rata* with other creditors; but an account accruing to the estate since the decease must be collected by the administrator, and paid by him according to sections 2190, 2191, of the Rev. Laws. Otherwise it would be altering the due course of distribution of assets. *Aiken* v. *Bridgman*, 37 Vt. 249; *Harris* v. *Taylor*, 1 New Eng. Rep. 392; 53 Conn. 500; *Rees* v. *Watts*, 11 Exch. 410; Chitty Con. 6th ed. 884; 99 Pa. 188; *Dale* v. *Cooke*, 4 Johns. Ch. 11; *Nichols* v. *Dayton*, 34 Conn. 65.

The refusal of the court to recommit the report was correct. All the requests, so far as the evidence would warrant, were fully complied with. Rob. Dig. 306, ss. 17, 21.

*T. R. Gordon*, for defendant.

The plaintiff is not entitled to recover the item of $720.20. The contract was made when Lura was a minor, and the report does not show anything which can be called a legal ratification. A ratification must be made with the deliberate purpose of assuming a liability from which the person knows himself to be discharged by law. Tyler, Inf. pp. 91, 94, 106; 1 Add. Cont. p. 270; *Smith* v. *Mayo*, 9 Mass. 62.

The alleged agreement and ratification were between mother

and daughter. The relation was that of parent and child; and hence there can be no recovery except upon proof of an express agreement and ratification. *Ashley* v. *Hendee*, 56 Vt. 209; *Sprague* v. *Waldo*, 38 Vt. 141; *Lunay* v. *Vantyne*, 40 Vt. 501; *Davis* v. *Goodenow*, 27 Vt. 715; *Andrus* v. *Foster*, 17 Vt. 556; *Fitch* v. *Peckham*, 16 Vt. 150; *Sawyer* v. *Hebard*, 2 New Eng. Rep. 189; 58 Vt. 375; *Ormsby* v. *Rhoades*, 5 New Eng. Rep. 129; 59 Vt. 505.

The words in the report—" she wanted the arrangement to continue "—if of any legal force, can be construed to refer only to future expenses, and contained no renewal of a past promise. The case shows that no debt was created then, and that neither party understood that one was.

There can be no recovery for the organ. It was a gift, if Lura was the owner. Tyler, Inf. pp. 91, 106; *Sawyer* v. *Hebard, supra.*

Nor can there by any recovery for the physician's bill. It was paid out of a common fund, without any expectation of repayment. And there can be no recovery for the burial expenses. *Sawyer* v. *Hebard, supra.*

The defendant's account, or rather credit upon the plaintiff's account, was properly allowed to the extent of $340.94; and an additional amount should have been allowed. These credits constituted payment *pro tanto* of the plaintiff's claim, and not an offset. The plaintiff, in taking the income from Lura's share of the real estate, reimbursed herself for moneys paid for Lura. But if the defendant's claim is viewed as an offset, it was properly allowed. The appeal vacated the action of the court below, and the parties are in the same situation that they would be in if the action had been commenced in the County Court. *Woodbury* v. *Woodbury*, 48 Vt. 94.

And if taking the income was payment, it was immaterial that it was taken after Lura's death.

The plaintiff had the defendant's money and property in her

own hands, and so, from day to day, was advancing, not her own money, but Lura's for her schooling.

It is the duty of the administrator to plead an offset in a case like this. Rev. Laws, ss. 2117, 2125, 2170; *Martin* v. *White*, 58 Vt. 398.

In all accountings, the account is taken up to the time of audit. *Ambler* v. *Bradley*, 6 Vt. 119; *Pratt* v. *Gallup*, 7 Vt. 344.

The costs were properly apportioned. *Gilbert* v. *Earle*, 47 Vt. 9; Rev. Laws, s. 1451; *Watts* v. *Kavanagh*, 35 Vt. 34.

The opinion of the court was delivered by

VEAZEY, J.    Exceptions were taken to the judgment rendered upon the auditor's report, in which the facts are concisely stated.    The plaintiff was the mother of Lura E. Hatch, deceased, and claims to recover the items of her account in controversy on the ground of a contract between the mother and daughter while the latter was a minor of sixteen years of age, and a ratification of the same after she became of full age.    The first item, including interest to September 1, 1886, was $720.20, for money which the plaintiff paid for school expenses of Lura while attending academies.

We think the report shows a distinct agreement on the part of Lura to repay her mother for these expenses.    Upon the facts reported the agreement was a natural one to be made, and was in its nature beneficial to the minor.    The mother clearly could not afford to give her daughter the higher education which she desired.    The latter had the means to be devoted to such use by the devise to her by her father, but not in ready money.    The finding of the auditor is incapable of a fair construction other than of an agreement as above stated, when taken in connection with the circumstances existing when the arrangement was made.

The defendant relies mainly upon the claim that this contract was not ratified after Lura arrived at her majority.    The

finding of the auditor is this : " After Lura became of age, and while still attending the seminary at Montpelier, she reiterated to her mother her desire to go to school there and her willingness to pay the expenses incident thereto from her own share, and referred approvingly to her former promise to that effect during her minority. She told her mother she wished this arrangement to continue as it had been before she became of age." There is no question but that the contract, by which a debt is incurred by an infant, may be ratified by an express promise to pay the debt, made by the infant, when he becomes of age, deliberately and with knowledge that he is not liable by law. To this extent the cases agree. Beyond this they are not entirely harmonious, at least in the enunciation of what is required to constitute ratification. As illustrations, see *Smith* v. *Mayo*, 9 Mass. 62, and *Whitney* v. *Dutch*, 14 Mass. 457.

There are many cases which hold that although an express ratification is necessary, yet it is not required to be in the form of an express new promise. *Tibbitts* v. *Gerrish*, 5 Foster (N. H.), 41, and *Harris* v. *Wall*, 1 Exch. 122, are examples. Acts and declarations of one after attaining majority, in favor of his contract, may be of a character to constitute as perfect evidence of a ratification as an express and unequivocal promise. Mere acknowledgment of the contract, or partial payment, will not alone be sufficient. There must either be an express promise to pay, or such a direct confirmation as expressly ratifies the contract, although it be not in the language of a formal promise. *Wilcox* v. *Roath*, 12 Conn. 551 ; *Gray* v. *Ballon*, 4 Wend. 403 ; *Whitney* v. *Dutch*, *supra*. The cases in Vermont have not recognized the necessity of an express promise in terms in order to constitute ratification of an obligation incurred during infancy. Where the declarations or acts of the individual after becoming of age fairly and justly lead to the inference that he intended to and did recognize and adopt as binding an agreement executory on his part made during

infancy, and intended to pay the debt; then incurred, we think it is sufficient to constitute ratification, provided the declarations were freely and understandingly made, or the acts in like manner performed, and with knowledge that he was not legally liable. This proposition is clearly within the scope of decision in a long line of approved authorities, cited in Tyler on Infancy and Coverture, 2d ed. chap. VI., and 1 Am. Lead. Cases, p. 250.

The Vermont cases plainly warrant us in holding that the above conditions are sufficient. In *Bigelow* v. *Kinney*, 3 Vt. on p. 353, PRENTISS, Ch. J., says: "Though it is laid down that a bare acknowledgment or recognition of the contract of an infant, after he comes of age, without an express promise, will not, where the contract is for the payment of money, or the performance of some personal duty, and remains executory, amount to a ratification; yet in general, an express act done under a contract of his infancy, implying a confirmation of it, has been held to be sufficient." See also *Forsyth* v. *Hastings*, 27 Vt. 646. Regarding these conditions as not only sufficient but *required*, we think they are all covered by the finding of the auditor. Taking that which she said to her mother after arriving at full age and while still at the seminary, in connection with the unmistakable understanding between the parties during the infancy, and all the circumstances, the conclusion seems to us irresistible that there was a mutual understanding that Lura would not only repay her mother for the future advances, but would pay the past advances as she had first promised. She then called the first arrangement " her former promise," and told her mother she wished it to continue as it had been before she became of age.

When the minds of contracting parties meet and they both understand that by what is said it is intended that it should be taken as an assumption of an obligation and a promise to pay, it is the equivalent of a promise in terms.

There is no question but Lura spoke deliberately and without

duress in any form; and we think it is plain that she spoke understandingly as to her legal liability. It has been held that in the absence of any proof to the contrary, it is to be presumed, that at the time of making the new promise, the person, lately an infant, was aware of his rights. *Taft* v. *Sergeant*, 18 Barb. 321. This would seem to be the natural presumption. But however this may be, the language of Lura, under the circumstances in which it was spoken, imports such knowledge. It is difficult to see what should lead Lura to renew her promise as to the payments in her behalf during infancy except upon the theory of knowledge that such renewal was necessary to create legal liability. She was then at the seminary, her contemplated education incomplete, and no change from the previous condition except that she had attained her majority. She then brings the matter up, reiterates her desire to go on, and in effect renews her former promise so as to make the renewal applicable as to past as well as for future advances. She had the education which about two years in the academy would bring, after having passed through the common school. We come to the conclusion of her knowledge of the legal situation without hesitation.

The plaintiff further claims to recover for an organ which the auditor finds she bought for Lura in 1872, when the latter was about sixteen years old, at her request, and which Lura claimed and treated as her own from its purchase till her death in 1877; and it was so regarded in the family. Lura's home was always at her mother's, and the organ was kept there, except that Lura had it with her when away at school for a short time. The auditor says he does not find there was any express contract by Lura to pay any of the expenses incurred by her mother for her, except those incident to her schooling.

We think these findings are insufficient to warrant the holding of the relation of debtor and creditor between Lura and her mother. There was no appointed guardian, and they held the ordinary relation of parent and child. The only ground for hold-

ing that the purchase of the organ created an indebtedness is that the mother bought it *at the request* of the daughter. While that might be sufficient as between strangers, we think it is not sufficient as between parent and child ; especially in reference to such an article and under the circumstances shown in the report. There is not enough shown to distinguish the case from the ordinary one, where the parent indulges the request of a child.

The plaintiff also claims to recover for nursing Lura in her last sickness, and for the physician's bill. This claim is clearly without legal foundation.

Neither can she recover for the burial expenses of Lura. These belong to the administrator of her estate to pay. This case is an appeal from the allowance of commissioners on claims against Lura's estate, and the jurisdiction is limited to claims accruing during the lifetime of the deceased. *Sawyer* v. *Hebard,* 58 Vt. 375.

The defendant presented to the auditor an account against the plaintiff, containing an item for the use and occupation of that portion of the farm which Lura's father, who died in 1872, devised to her in his will. This item covered the whole period from the time of the father's decease to the time of this accounting, being about five years before Lura died, and nearly nine years since. The finding of the auditor as to how the farm was carried on and the home maintained by the mother and the understanding between her and Lura, plainly exclude all ground of claim for rent against the mother for the period prior to Lura's death.

The plaintiff objected to the allowance of that part of the item which accrued after Lura's decease on various grounds, one of which is that this claim is not one which grew out of the contract in which the plaintiff's account accrued, and did not accrue to the defendant under that contract but independently of it, and therefore cannot be allowed in offset to, or as credit against the plaintiff's account. The original contract which

Hatch v. Hatch's Estate.

constituted the basis of the plaintiff's account was in substance and effect a loan of money to Lura. The claim of the defendant for the mother's use and occupation of Lura's share in the farm, after her decease, was independent of that contract.

In defining the power of commissioners appointed to receive and adjust claims, the statute, sec. 2117, R. L. provides that they "may try and decide upon claims which by law survive against or in favor of executors and administrators," etc., and " may set off such demands, in the same manner in favor of the estate." This plainly refers to claims existing at the time of the decease. The word *survive* indicates that. Again in sec. 2127, the provision is : " When a creditor, against whom the deceased *had* claims, presents a claim to the commissioners, the executor or administrator shall exhibit the claims of the *deceased* in offset," etc. This is in harmony with the previous section, and as plainly limits the offset to claims existing at the time of the decease. That which accrued afterwards had never accrued to the deceased person. That part of the rent which accrued after Lura's decease, accrued to her administrator as an asset of the estate, and came within the operation of those sections of the statutes which regulate the distribution of assets, ss. 2190, 2191. In *Aiken* v. *Bridgman*, 37 Vt. 249, the court said : " A defendant is not allowed to setoff a debt due him from the plaintiff's testator against the debt which accrued to the plaintiff in his representative capacity after the testator's death ; for this would be altering the due course of distribution of assets, and the defendant might be indirectly paid before the creditors of a higher degree." We think this rule and the reason of it applies to this case. Upon both principle and authority there is no mutuality in the accounts sought to be offset one against the other. *Harris* v. *Taylor*, 53 Conn. 500 ; *Stephens* v. *Cotterell*, 99 Penn. St. 188. The offset cannot be allowed.

This disposition of this item of the account in offset renders it unnecessary to pass on the question of homestead and dower.

It appears that when the executor of B. B. Hatch's will, settled his administration account he had a balance of cash $58.34, belonging to the residuary legatees, and he paid the same to the plaintiff. The proportion of that belonging to the estate of Lura was $12.85. The plaintiff still holds that fund and so far as appears must pay it with interest to the defendant. But it does not appear that it accrued to Lura while in life, and is not therefore a proper item of offset in this case.

Motion was made in the County Court to recommit the auditor's report, which was overruled, to which the defendant excepted. The ground of this motion was that the defendant filed several requests with the auditor to find and report facts involved in the defence and which the defendant had the right to have reported, but which the auditor did not report.

The difficulty with the defendant's point is that there is nothing in the record before us to show that the court was in error in refusing to recommit, even if the right of exception exists to such a ruling.

" Exhibit U," upon which the defendant's counsel mainly rely in support of this alleged error of the County Court fails to show the vitiating fact which they assumed was therein shown.

The plaintiff waives her exception to the ruling excluding her account books so-called. The apportionment of costs by the County Court was apparently warranted ; and we do not think the disallowance of the offset affords reason for changing the order, in view of the large decrease from the allowance of the commissioners.

The judgment is reversed, and judgment is rendered for the plaintiff for the item of $720.20 and interest thereon, and costs in this court ; the cost previous to be apportioned. Let this judgment be certified to the Probate Court.