## MOLINA v. MUNOZ et al.

Circuit Court of Appeals, First Circuit. March 16, 1929.

No. 2300.

Carroll G. Walter, of New York City (Henri Brown, of San Juan, Porto Rico, on the brief), for appellant.

O. B. Frazer, of San Juan, Porto Rico, for appellee intervener.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This appeal raises an important question under the Porto Rican Agricultural Loan Act of 1910, as amended. On August 7, 1924, Lebron, the intervener appellee, leased for ten years to defendant Munoz a sugar plantation. Punctual payment of the rent reserved was for the first five years guaranteed by appellant's assignors, the Goffinets and the Central, Santa Juana. On the same date, a duly recorded contract was made between the lessee Munoz and appellant's assignors for advances to be used for producing cane secured under the Agricultural Loan Act of 1910. In November, 1927, the secured claim for advances, then over $20,000, was assigned to the plaintiff Molina, who thereafter made further advances for harvesting the crop.

Munoz failed to pay the rent due December 31, 1927, and Lebron filed in the district court of Humacao on January 7, 1928, an eviction suit. On January 31, 1928, Molina filed against Munoz a bill of complaint in the court below, grounding jurisdiction on diversity of citizenship, seeking specific performance of the contract through a receiver of the leased properties, as Munoz was alleged to be insolvent and unable to perform. A receiver was appointed, who made further substantial advances, and apparently received certain amounts from the sale of sugar before his delivery of the premises to Lebron on May 19, 1928, under the final decree of the court below. On March 30, 1928, Lebron intervened in this suit; alleged that in his lease from Munoz it was provided:

"Fourth. The failure to comply with any of the said conditions as well as the failure to pay any monthly installment of rent shall cause the rescission of this contract and thereupon any improvement which the lessee shall have made in the buildings and crops as well as crops planted and pending harvest shall be for the benefit of the owner of the property and the lessee shall have no right to claim any indemnity therefor." That for nonpayment of rent for December, 1927, he had obtained final judgment of eviction against Munoz, that Molina's assignors had legal notice of this lease when they made the contract for advances, and that therefore his right to possession of both land and crops was paramount to any claim or lien of Molina.

In Molina's answer, filed April 9, 1928, he alleged ignorance of clause 4, supra, and of Munoz's failure to pay the December rent until after his return from the states, on January 23, 1928; that he then tendered the rent due, and later deposited in court rent for the four months, December to March, inclusive, with interest from the due dates. As assignee of the Goffinets and the Central, Molina claimed a valid and enforceable lien under the provisions of sections 1823, 1824, and 1827 of the Civil Code, and sections 52 to 72 of the Agricultural Loan Act as amended.

At the trial on April 28, 1928, the lease and the contract of August 7, 1924, were put in evidence; also the record of the eviction suit, which went to final judgment on February 14, 1928. Molina testified, without contradiction, to his offer to pay the rent on January 24 or 25, and his deposit in court of the rent (with interest) for four months; that the value of the crop about to be harvested was approximately $15,000. The total claimed to be secured is not clearly

shown, but it is much more than the value of the 1928 crop.

On May 9, 1928, the court (Wells, J.) found the facts "as set up in the intervener's bill of intervention are true," and that Lebron "is entitled to the possession of the" property, "and of all crops growing thereon and of the proceeds of such crops as may have been disposed of by said receiver, together with costs." Decree accordingly was entered on May 15, 1928, in which the receiver was ordered to "file a report to this court under oath within ten days hereafter showing in detail the amounts received by him from the sale of any sugar cane or other crops growing upon the said properties at the time of his appointment and to pay said amount without deduction of any kind whatsoever to the intervener, Jose Ramos Lebron."

█ The receiver's report shows substantial expenditures both for harvesting the 1928 crop and for planting for the 1929 crop—obviously offsetting, pro tanto, expenses Lebron would have been under, if he had rightfully obtained immediate possession under his eviction suit. On what theory of equity, accounting was denied for these proper expenditures, beneficial to the appellee and made by the court's receiver, we do not perceive, even if, on the general merits, the decree should have been for Lebron. On elementary equitable principles, as well as under the provisions of Civil Code, §§ 369, 373, 454, 455, these expenditures, so far as of value, should have been reimbursed by the owner as a condition of the delivery of possession by the receiver. Compare Jackson v. Railroad, 99 U. S. 513, 25 L. Ed. 460.

█ The main question is whether the appellant's lien under the Agricultural Loan Law of 1910 is valid and enforceable, notwithstanding the provision, supra, in the lease and the judgment of eviction. We think it was.

By what was, in effect, a single transaction: Lebron furnished land and buildings; Munoz agreed to furnish labor; plaintiff's assignors agreed to furnish working capital; and the Central agreed to grind the sugar cane—thus to be produced and marketed in the form of sugar. It was a species of joint undertaking, involving closely interrelated rights and obligations. Lebron knew, or at any rate was charged with knowledge, that without security on the crops no capital would be furnished for working his land; that, practically, his lease was worthless without the intervention of the furnishers of working capital. Manifestly, the contracts must be construed in accordance with the

applicable provisions of law. The Agricultural Loan Act of 1910 was remedial, and entitled to a liberal construction. In general, it gives to the holder of a duly recorded lien under this act preference over all other claims except taxes. In section 3 of the act it is provided:

"Where the lessee or usufructuary under any title shall fail to perform his obligations to the owner or representative of the property, the creditor making the advances for agricultural purposes may, on having knowledge of the fact, fulfill such obligations for account of the debtor and charge the same to the account of advances for agricultural purposes."

In section 8 we find:

"That such entries and marginal notes of entries as may be made in the 'registry of contracts for agricultural purposes' shall be to the prejudice and binding upon third parties, from and after the filing of the respective documents.

"If while the lien is in force, the products encumbered are disposed of by the debtor to a third party, the creditor making the advances for agricultural purposes shall have the right to obtain from the latter the delivery of the said products or the proceeds of the sale thereof in case the return of the products is impossible.

"If, after the recording of a contract for agricultural advances and the grinding of cane, the cane which is the object of the contract, or any interest therein, or the factories or 'centrals' at which said cane is to be ground, shall be transferred voluntarily or by operation of law, the transferee shall be bound to fulfill all the obligations of the contract and shall be liable for non-performance thereof in the same manner and to the same extent as the contracting parties; it being understood that no transfer shall release the contracting parties from their obligations or liabilities under the contract."

And section 1823 of the Civil Code contains the following applicable provision:

"With regard to specified personal property of the debtor, the following are preferred: * * *

"6. Credits for seeds and expenses of cultivation and harvesting, advanced to the debtor, with regard to the fruits of the crops to which they were applied."

And by section 1827 the preference for such advances was accorded priority over the landlord's preference for rent:

"Credits which enjoy preference with regard to certain personal property exclude all the others to the extent of the value of the personal property to which the preference refers.

"When two or more creditors claim preference with regard to certain personal property, the following rules shall be observed as to priority of payment: * * *

"3. Credits for advances for seeds, expenses of cultivation, and harvesting, shall be preferred over those for rents and leases, with regard to the fruits of the crop for which they were incurred."

The same general theory of prohibiting unjust enrichment is found in Civil Code, § 363:

"The receiver of fruits is obliged to pay the expenses incurred by a third person in their production, gathering and preservation."

Under section 9 of the act, the lien remains in force during the contract and for six months thereafter. The provision in section 3 limiting such contracts by a lessee to the term of his lease is not here applicable.

■ It is not and could not be contended that clause 4 of the lease prohibited Munoz from creating a lien upon his crops; Molina therefore bought in November, 1927, an admittedly valid lien. The claim is and must be that Lebron by his eviction suit destroyed that lien. This cannot be so; section 8, supra, applies. The result of that suit was simply to transfer to Lebron by "operation of law" the leased property and (as he claims) "the cane which is the object of the contract," and thus left him subject to the provision that "the transferee shall be bound to fulfill all the obligations of the contract" resting upon Munoz. To hold otherwise, as the court below held, would be to nullify the plain purpose of the act; so construed, the act would be nearly if not quite worthless.

■ There is another ground on which we might rest a conclusion in favor of the validity of the lien.

The appellant's assignors were guarantors and entitled to all the rights of guarantors. Their status as guarantors and as furnishers of working capital for the joint enterprise was grounded on their lien upon the crops their advances produced. Accepting them as guarantors, Lebron was bound to do nothing to prejudice their rights and remedies against Munoz and the security they relied upon both for their advances and for reimbursement for their possible payments of rent. Guarantors are entitled to reasonable notice of their principal's default whenever lack of such notice will prejudice their

rights or remedies. 28 C. J. pp. 981, 987, 991, and cases cited; Beebe v. Dudley, 26 N. H. 249, 59 Am. Dec. 341. Lebron gave no notice either to Molina or to his assignors. On the contrary, two days after Molina left for the states, he brought his eviction suit; he refused Molina's tender of the rent on January 24, and his later tender of four months' rent. Assuming, but without deciding, that Molina's rights are no greater than those of his assignors, this attempt to enforce, without notice, forfeiture against the security relied upon by the guarantors, both for their advances and for reimbursement of any rent paid by them, is contrary to every principle of equity and fair dealing. No case can be imagined in which notice would be more clearly requisite. It results that, on general principles of equity, Molina's tender, followed by his formal deposit of rent (with interest) for four months in the court below, restored the status quo and left Molina's lien good.

On this record, the amounts subject to the lien and advanced by Molina and the receiver for the 1929 planting cannot be determined.

The decree of the District Court is vacated, and the case is remanded to that court, for further proceedings not inconsistent with this opinion, with costs for the appellant.