# NATIONAL CITY BANK OF NEW YORK v. GARZOT et al.

## No. 3024.

Circuit Court of Appeals, First Circuit.
April 16, 1936.

WILSON, Circuit Judge, dissenting.

———◆———

E. T. Fiddler, of San Juan, P. R. (Jorge Cordova, of San Juan, P. R., on the brief), for appellant.

O. B. Frazer, of New York City (Leopoldo Feliu, of San Juan, P. R., on the brief), for appellees.

Before, BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This involves the ownership of certain sugar cane roots, or "ratoons," and crops of sugar cane harvested from them in 1933 and succeeding years. The facts are not in dispute. The appellees, whom we shall refer to as the plaintiffs, own certain agricultural land in Puerto Rico. On May 6, 1928, they leased it by a duly recorded public instrument to Garzot & Fuertes, Inc., for ten years; rent was payable quarterly in advance, and the lessee was to pay all taxes. The lease contained provisions for repossession by the lessor on default by the lessee. At the time the lease was made, the land was owned by the plaintiffs and others jointly. It was afterward partitioned; the premises now in question being set off to the plaintiffs. There is no controversy as to their title. The five leased parcels here in question comprise about 473 acres planted with ratoons on which cane was growing at the time of the default and later became suitable for harvesting for the 1933 crop. Garzot & Fuertes, Inc., owned or held on lease forty-three parcels in all, used for growing sugar cane and manufacturing sugar.

A few days after taking the lease in question, Garzot & Fuertes, Inc., borrowed $350,000 from the United Porto Rican Bank and gave ten notes of $35,000 each, payable one every year for ten years. As security for this loan, Garzot & Fuertes, Inc., mortgaged to the bank the lands which it owned, and it also gave a crop lien on all sugar cane grown on lands owned or leased by it. The mortgage and the crop lien were to remain in force until all the notes were paid. Both were public instruments duly recorded.

Garzot & Fuertes, Inc., defaulted in the taxes payable by it under this lease from the commencement of the lease and in the rent beginning January, 1932. In June and July, 1932, the plaintiffs gave notice of these defaults both to the lessee and to the Porto Rican Bank. On August 1, 1932, they demanded a return of the premises, and on August 11, 1932, the default continuing, began action to forfeit the lease and the crop lien and to recover the premises. In this suit, on August 27, 1932, a receiver was appointed who took possession of the lands in question and of the crops standing thereon. The suit was not contested; and in January, 1933, judgment was entered in the plaintiffs' favor, forfeiting the lease, adjudging the canes on the property to belong to them, but without prejudice to the rights of the Porto Rican Bank, and directing

delivery of possession to them. The proceedings were continued, and the cause remained pending as to the other defendants. The premises remained in the possession of the receiver. No appeal was taken from this judgment.

More than four months after it was entered the National City Bank moved to intervene in the case and was allowed to do so. Its intervening petition sets up that it had acquired from the United Porto Rican Bank by indorsement to it said notes of Garzot & Fuertes, Inc., amounting to $210,000 of the original loan; that said amount was presently due; that, by reason of such indorsement of the notes to it, the intervener was entitled to the benefit and security of the crop lien given by Garzot & Fuertes, Inc., to the Porto Rican Bank; and that said lien attached to the canes growing on the premises in question in 1932 and to the sugar made from them for the year 1933 and for subsequent years until the full amount of the loan had been repaid. The intervening petition does not allege any payment or tender of unpaid taxes or rent. The intervener declined to amend by inserting such allegations; its position being that it is entitled to the crops without observing those provisions of the lease and to the sugar and molasses made therefrom without any deduction for harvesting and manufacturing.

This intervening petition was demurred to by the plaintiffs; the demurrer was sustained by the District Court of Humacao, and on appeal by the Supreme Court of Puerto Rico. The National City Bank then took the present appeal.

The District Court ruled that the transfer of the notes by indorsement only from the Porto Rican Bank to the National City Bank did not operate as an assignment of rights under the crop lien contract where third parties were involved; that the lessors were third parties; and that the City Bank was not in a position to enforce against them rights resting on the crop lien contract. It therefore held that the intervening petition stated no ground for relief and dismissed it.

The Supreme Court reached the same result, but for somewhat different reasons. It summarized its views of the law as follows:

"Where the contract for advances is entered into with the lessee of a property and such lessee fails to carry out the conditions stipulated in the lease, if the crop loan creditor wishes to enforce all the rights which the special law on the subject grants to him, he must assume the lessee's obligations to the landlord and duly fulfill them in accordance with the provisions of section 3 of that law.

"If he fails to do so, his rights with regard to the crops existing on the leased properties will be confined to such as his debtor, the lessee, may have upon them, to be regulated in accordance with the general provisions of the Civil Code regarding preference and priority of payment of credits, and subject to the rule established by section 4 of the said special law.

"Applying that decision (Ana Maria Sugar Co. v. Santos, 48 P.R.R.[Span.Ed.] 65) to this case, the affirmance of the judgment appealed from herein necessarily follows without the need of discussing or deciding any of the other questions raised, inasmuch as here the intervenor does not allege in its complaint that it had performed for the lessee, nor does it state in it facts sufficient to show the preference of its credit with regard to the crops existing on the properties of the plaintiffs at the time of the rescission of the lease contract, since it does not specify what part of the advances, if any, was used in the raising of such crops."

The prayer of the intervening petition is, in substance, that the gross proceeds of all sugar and molasses produced in the 1933 crop and all subsequent crops until the notes are paid be turned over by the receiver to the intervener without any deduction for expenses incurred in harvesting, manufacturing, selling, and shipping, etc., and, as above stated, without any payment of taxes or rent by the intervener. On whom the taxes and costs of harvesting, manufacturing, and selling the crop are to fall is not stated.

As so stated, the claim in its extreme form is too obviously without merit to require discussion. The lessors were not parties to the crop lien and cannot be deprived of their land in any such way. The Agricultural Financing Act (Act of March 10, 1910, as amended by Act 39 of April 30, 1927) explicitly provided that, "if the property or the buildings and machinery are held by him (the debtor) as lessee, or in any other form of temporary usufruct, the contract of advances

shall not extend over the term and conditions stipulated in regard to the rights of such lessee or usufructuary." "Where the lessee or usufructuary under any title· shall fail to perform his obligations to the owner or representative of the property, the creditor making the advances for agricultural purposes may, on having knowledge of the fact, fulfill such obligations for account of the debtor and charge the same to the account of advances for agricultural purposes. The creditor may likewise subrogate himself in the obligations of the debtor to third parties for the sole purpose of securing a faithful performance of his contract of advances for agricultural purposes." Section 3, Civil Code, 1930 Edition, p. 403.

The crop loan contract contains a clause headed "Failure to Pay Rentals":

"In case Garzot & Fuertes should fail to pay two quarterly installments of rentals to any of the owners or co-owners of the parcels herein before described, in accordance with the terms of the third paragraph of clause three above, or should be in default in any of the grounds specified in the said clause three of this deed, the Bank may, if it should consider it convenient, but without being obligated so to do, pay the said rentals and enter into possession of the leased parcels and take charge of the planting and cultivation of the canes on the same until the total amount of the said loan and interest shall be completely paid, and in such case the Bank, or any assignee, shall render exact accounts to Garzot & Fuertes of all the expenses, which shall be paid from the proceeds of the canes, all in accordance with what is established in section 3 of the Act above mentioned as amended by Act 66 approved August 1, 1925."

The plain effect both of the statute and of the contract is that if the crop lienor wishes to take advantage of a lessee's rights under a lease he must perform the lessee's obligations thereunder, which is what the Supreme Court held.

■ It is urged for the intervener that, even if its full claim be unmaintainable, it was nevertheless entitled, without making any payment of rent or taxes, to the growing crop when the lease was forfeited, in August, 1932. It argues that we so decided in Molina v. Munoz, 31 F.(2d) 727. No such contention, however, was made in that case. The creditor there paid or offered to pay the rental under the lease. The question was whether the lessor might retake the premises with the crop on them for breach of the lease and exclude not only the lessee but also the person holding the crop lien from realizing on the crop. We held that the crop lienor who offered to pay the rent had the right to do so and to hold the premises and harvest the crop, which is in effect what the Supreme Court decided in the present case. The appellant's contention is basically different. It seeks to throw the whole burden of carrying the land while the crop is being raised and harvested on the landowner without any recompense to him whatever. In holding that, "if the crop loan creditor wishes to enforce all the rights which the special law on the subject grants to him, he must assume the lessees' obligations to the landlord and duly fulfill them in accordance with the provisions of section three of that law," we are by no means prepared to say that the Supreme Court of Puerto Rico was clearly wrong. Indeed, its views are in accord with the general law on this subject both in this country and in England. At common law, a lessee of agricultural land who defaults under the lease and is dispossessed for breach of condition, loses his rights to the growing crops. Davis v. Eyton, 7 Bing. 154; Howell v. Schenck, 24 N.&L. 89; Samson v. Rose, 65 N.Y. 411; Hunter v. Jones, 2 Brews (Pa.) 370; Debow v. Colfax, 10 N.J.Law, 128; Bain v. Clark, 10 Johns. (N.Y.) 424; Carney v. Mosher, 97 Mich. 554, 56 N.W. 935; Carpenter v. Jones, 63 Ill. 517. The lessees' grantee, i. e., the crop lienor, has no better title than the lessee. There is no "unjust enrichment" of the lessor, as contended by the intervener, because the latter could have obtained all rights and advantages accruing under the crop lien contract if it had chosen to pay the sums due under the lease. Gregg v. Boyd, 69 Hun, 588, 23 N.Y.S. 918. The only rights which the intervener had in the crop after judgment was entered in favor of the plaintiffs were such as were given by the Agricultural Financing Act. The construction of this local act by the local courts is, if not controlling, highly persuasive. As has been said, we are by no means satisfied that it was clearly wrong. With reference to the view advanced by the appellant, that the assertion by the lessors of their right of repossession of the premises for breach of the conditions of the lease amounted

to a *transfer* of the property to them, and that such transfer was subject to the existing crop lien in favor of the bank, it may be said that we do not regard the assertion of the lessors' rights as a transfer of property within the rule which subjects a transferee to existing rights in favor of third persons. Moreover, in this case, the bank, as above stated, made its crop loan with notice of the existence and provisions of the lease and reserved to itself the right to perform the lease and have the crops, in case the lessee defaulted.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs.

WILSON, Circuit Judge (dissenting).

The issues raised are by demurrer to the petition of the National City Bank of New York for intervention in the complaint to rescind a lease of five parcels of land to a corporation known as Garzot & Fuertes, in which action the United Porto Rican Bank was also a party defendant.

The District Court of Humacao dismissed the petition of the intervener on the ground (1) that there was not a proper assignment of the lien of the Porto Rican Bank to the intervener, it being done by the indorsement and delivery of the notes; (2) because the petition did not specify what part of the loan to Garzot & Fuertes was expended on the five parcels owned by the complainant.

The Supreme Court, stating that there was a serious question raised as to the validity of the assignment, though it did not decide it, put its decision sustaining the judgment of the District Court (1) on the ground that the intervener does not allege that it has performed the covenants of the lease for the lessee; (2) nor does it state facts sufficient to show the preference of its credits with regard to the crops existing on the properties of the plaintiffs at the time of the rescission of the lease, since it does not specify what part of the advances, if any, was used in raising such crop.

It may be a question whether the issue of the validity of the assignment of the agricultural lien is raised before this court by the assignments of error, as the Supreme Court did not decide this question, but we may say that the act of 1910, while it provided that assignments of agricultural liens *may* be the same kind of instruments as those by which it is created, it does not prohibit their assignment by other methods.

Manresa says of section 1280 of the Spanish Civil Code:

"Article 1280 of the Code says that there should be set forth in a public document: '1. Acts and contracts which have as an object the creation, transmission, modification or extinction of real rights on real property.' Does this mean to say that those contracts in another form are not valid? That they do not obligate the contracting parties and their heirs? We believe that such is not the scope of the provision."

Section 1418 of the Civil Code of Puerto Rico (1930) provides that: "The sale or assignment of a credit includes that of all the accessory rights such as the security, mortgage, pledge or privilege," which is the same rule as applied under the common law in the states.

It was applied in the case of Mercantile Bank of the Americas, Incorporated v. West Porto Rico Sugar Co., Incorporated, 12 Fed.Rep. of Puerto Rico, 323, in which it was held that the transfer and delivery of the notes which were by a second instrument given as security carries with it all the rights and privileges which may accrue from the accompanying written instrument.

This court said in Credito y Ahorro Ponceno v. Gorbia, 25 F.(2d) 817, 820:

"It must be conceded that, if the colonos' notes were secured by the 948 quintals and 39 pounds (948.39) of tobacco by way of a lien thereon, the right to the possession of the tobacco passed to the bank upon the transfer to it of the notes on April 16, 1921; for under the Code of Porto Rico 'The sale or assignment of a credit includes that of all the accessory rights, such as the security, mortgage, pledge, or privilege.' Civil Code of Porto Rico, § 1431; Rev.Stats. and Codes of Porto Rico 1911, p. 760; 10 Manresa, pp. 350, 351. This is also the principle of the common law."

The question is raised as to whether the complainants are "third persons" who have acquired their property without notice of the lien of the intervener. A "third person" is one who acquires property for value without notice. One who acquires by operation of law takes subject to any incumbrances there may be upon it. The

action of the complainants merely sought to have the lease granted the lessee rescinded. The rights of the Porto Rican Bank, the crop licnor, were expressly preserved. If such as these were had been transferred to the New York bank, by the transfer of the credit under section 1418 of the Civil Code (1930), the lessor by the rescission of the lease received back its property subject to the lien.

The ground stressed in the opinion of the Supreme Court is that the petition of intervention does not show that the intervener paid the rentals due after default by the lessee, relying on the case of Ana Maria Sugar Co. v. Santos & South Porto Rico Sugar Co. of Porto Rico, Intervener.

The Supreme Court, in its opinion in this case, summarized the law as laid down in the Ana Maria Sugar Co. Case as follows:

"Where the contract for advances is entered into with the lessee of a property and such lessee fails to carry out the conditions stipulated in the lease, if the crop loan creditor wishes to enforce *all the rights* which the special law on the subject grants to him, he must assume the lessee's obligations to the landlord and duly fulfill them in accordance with the provisions of section 3 of that law." (Italics supplied.)

"If he fails to do so, his rights with regard to the crops existing on the leased properties will be confined to such as his *debtor, the lessee, may have upon them,* to be regulated in accordance with the general provisions of the Civil Code regarding preference and priority of payment of credits, and subject to the rule established by section 4 of the said special law." (Italics supplied.)

But the Supreme Court in the Ana Maria Sugar Co. Case further said:

"In our judgment, in order that the preference may continue in full force during the whole term of the contract, it is necessary that, where the lessee fails to perform, his crop loan creditor should perform for him; *but this does not mean that the latter should lose entirely his preference with regard to the fruits existing on the properties at the time that the lease terminates or is declared rescinded.*" (Italics supplied.)

It also quoted from section 8 of the Act of 1910, to the effect that:

"If after the recording of a contract for agricultural advances and the grinding of cane, the cane which is the object of the contract, or any interest therein, or the factories or centrals at which the said cane is to be ground, *shall be transferred voluntarily or by operation of law, the transferee shall be bound* to fulfill all the obligations of the contract and shall be liable for nonperformance thereof in the same manner and to the same extent as the contracting parties; it being understood that no transfer shall release the contracting parties from their obligations or liabilities under the contract." (Italics supplied.)

It also quoted with approval from the case of Molina v. Munoz (C.C.A.) 31 F.(2d) 727, 729:

"It is not and could not be contended that clause 4 of the lease prohibited Munoz from creating a lien upon his crops; Molina therefore bought in November, 1927, an admittedly valid lien. The claim is and must be that Lebron by his eviction suit destroyed that lien. This cannot be so; section 8, supra, applies. *The result of that suit was simply to transfer to Lebron by 'operation of law'* the leased property and (as he claims) 'the cane which is the object of the contract,' *and thus left him subject to the provision that 'the transferee shall be bound to fulfill all the obligations of the contract'* resting upon Munoz. To hold otherwise, as the court below held, would be to nullify the plain purpose of the act; so construed, the act would be nearly if not quite worthless." (Italics supplied.)

While the opinion in the above case added that there was another ground upon which it might rest its decision, viz., because no notice was given to the assignee before bringing action of the claim of forfeiture against the security relied upon by the guarantors, the decision rests in the main upon section 8 of the Agricultural Loan Act and the quotation above.

In the case at bar, the rights of the Porto Rican Bank as crop licnor and assignor of the intervener were expressly preserved. The lands were delivered into the possession of a receiver and remained in his possession and under his operation.

Also see section 1828, Civil Code (1930).

The Supreme Court, however, apparently disregarded the fact that the petition for intervention claimed a lien on the

1933 crop which grew from ratoons planted by the lessee in 1931 or 1932, before the lease was rescinded, and to which the lien of the Porto Rican Bank had already attached. The allegation that the intervener claims a crop lien for the entire remaining period of the crop loan cannot on demurrer militate against its claim, if a lien on the 1933 crop attached to the ratoons planted before the default took place, or so much thereof as it is able to prove on hearing. The opinion of Judge Morton states that: "The five parcels here in question comprise about four hundred seventy-three acres planted with ratoons on which cane was growing suitable for the 1933 crop." The only reason assigned by the Supreme Court for disregarding this fact was because it did not appear "what part of the advances, if any, was used in raising such crop."

It was on this ground that the District Court of Humacao held that the petition of intervention was ambiguous, but it has never been held since the act of 1910 that it was necessary for the person loaning money for agricultural purposes to prove that it was used on the property on which he claimed a lien. The decision of the District Court which was followed by the Supreme Court on this point was apparently based on section 1822 of the Civil Code (1930 Ed.) and not in section 8 of the Act of 1910. The Supreme Court of Puerto Rico pointed out in its opinion in the case of Perez v. Claudio & South Porto Rican Sugar Co., Intervener, decided May 29, 1935, after the Ana Maria Sugar Co. Case, and after the decision in the instant case:

"It is indisputable that the preference granted by sections 1822 and 1826 of the said code is limited to the fruits which were the object of the advances. But the crop lien granted by the Act of March 10, 1910, is not subject to such a limitation. That statute was enacted precisely for the purpose of facilitating the loans to farmers and, in furtherance of that purpose, it tends to establish greater guarantees in favor of the lender. If the Civil Code, by its section 1822, had provided the necessary guarantees, there would have been no necessity for enacting a special law on the subject. The preference granted by the said section is so limited, that it could not reasonably be offered as sufficient in itself to encourage the investment of capital for agricultural purposes."

The court also said in that case, if the law was as laid down in the instant case, the preference granted is so limited that it could not reasonably be offered as sufficient in itself to encourage the investment of capital for agricultural purposes.

The cases of Gomez v. Bravo, 34 P.R.R. 141, and Roque Gonzalez & Cia v. Torres (C.C.A.) 51 F.(2d) 237, have served to assure crop creditors that they need not supervise the expenditure of money loaned so long as they make the advances for such purposes. To require a crop creditor to prove to what extent his advances were used on any particular parcel of land, when the crop producer leased the lands on which the crop was produced from different owners would likewise defeat the purposes of the law.

The opinion relies on the rule that an interpretation of local statutes by the local court of Puerto Rico, unless clearly wrong, should be accepted by this court; but, unless the interpretations by the local courts have been consistent or if the Supreme Court has overlooked an important fact in applying the law, this court is not obliged to accept a decision of that court as controlling, but may accept the rulings of that court that appear to be most reasonable in view of the purpose and language of the statutes.

In view of the decisions and the provisions of the 1910 act as amended, I think the intervener has stated sufficient in its petition to warrant a hearing to determine the extent of its lien on the 1933 crop. As to whether he can claim a lien on the future crops without payment of the rentals will depend upon the facts shown by the evidence.