## McGARRITY *et al. v.* COOK.

1. The deed of an infant is voidable, and the infant may disaffirm the deed within a reasonable time after attaining majority; and if he fails to do so, the right of avoidance on the ground of infancy will be lost. What is a reasonable time will depend upon the facts of each case, but will not be longer than seven years after the disability is removed.
2. If an infant executes a deed he may, after attaining majority, affirm it by acts which reasonably imply an affirmance, and after such affirmance he will be estopped from avoiding the deed on the ground of infancy at the date of its execution. Under the pleadings and the evidence it was erroneous to fail to charge the principle just stated, and to charge in such manner as to exclude the question of estoppel from consideration of the jury.
3. No ruling will be made as to the sufficiency of the evidence to support the verdict. Other assignments of error than those dealt with in the preceding note are without merit.

No. 2758.  SEPTEMBER 30, 1922.

Complaint for land. Before Judge Worrill. Early superior court. July 30, 1921.

On August 28, 1919, Mrs. Mattie May Cook, whose maiden name was Mattie May Lewis, instituted an action of complaint for land against B. T. McGarrity and J. W. Cochran of Calhoun County, Georgia, and J. E. Dempsey of Ragland, Alabama. The plaintiff sued as an heir at law of her father and mother, both deceased, to recover an undivided one-sixth interest in a described tract of land and mesne profits. The land was a farm, and included the family residence in which plaintiff's father and mother died and in which the plaintiff continued to live with her elder brother, who assumed parental care in raising his younger sister and brother. The petition contains the allegation that the plaintiff is only 27 years of age. The defendants' answer as amended denied the allegations of ownership of one-sixth interest in the land by the plaintiff as set forth in the petition, and alleged the following: " 6. That on or about August 29, 1911, the plaintiff in this case executed and delivered to W. P. Lewis, these defendants' predecessor in title to the land in dispute, for a consideration of $400.00, her warranty deed . . conveying . . her one-sixth undivided interest in and to the same. 7. That the said W. P. Lewis, on or about January 4th, 1912, conveyed said land to the defendant J. E. Dempsey, and one E. C. Hackney, jointly; and the said Dempsey and Hackney immediately thereafter went into possession of said land under said deed of conveyance. 8. That on or about May 4th, 1913, said E. C. Hackney conveyed his interest in said land to the defendant J. E. Dempsey, who in turn conveyed said land, on or about December 17th, 1919, to the defendant J. W. Cochran. That the defendant J. W. Cochran had purchased said land of and from said Dempsey, without any knowledge whatever of any claim of plaintiff upon the same prior to the filing of this suit, to wit, on or about Aug. 26, 1918, and had been in possession of the same thereunder since December, 1918, but the deed of conveyance thereof was not executed until about December 17th, 1919, as aforesaid. 9. That the said Dempsey and Hackney purchased said land as aforesaid, and the said Dempsey purchased said interest of said Hackney as aforesaid, without any knowledge whatever of any claim of the plaintiff upon the same. 10. That the plaintiff had actual knowledge at the time of the purchase of said land from her brother W. P. Lewis by said Dempsey and Hackney and of their entry upon

the same thereunder, and that said land was being held from that time until the filing of this suit by said Dempsey and Hackney and their successors in title to the same adversely to any claim she might have against the same. 11. That these defendants did not know at the time of their several purchases of said land, nor do they now know, the age of said plaintiff, nor did they have any reason to suspect that she was not of lawful age when she executed and delivered the foregoing conveyance to her brother W. P. Lewis; neither did the said E. C. Hackney know or have reason to suspect that she was an infant at that time. 12. These defendants show that if in point of fact said plaintiff was an infant at the time she executed said conveyance to her said brother, W. P. Lewis, which fact, for want of sufficient information, these defendants are neither able to admit nor deny, that she was at that time at least 19 or 20 years of age, and had reached such years of discretion as she could realize and take an account of her actions and the consequences thereof, and that she did have actual knowledge of the fact of the execution of said conveyance and the meaning thereof; that she was a woman except in not having passed the legal limit of 21 years, of sound mind and discretion; and from that time until the filing of this suit, six years afterwards, labored under no legal disability whatsoever, save a short period of minority, knowing all the time that she had executed said conveyance and that innocent purchasers had in the meantime acquired said property. 13. That during all this time said plaintiff did not in any way or manner do any act or thing to disaffirm her act in conveying her interest in said land to her said brother W. P. Lewis; but continued, from the time of the execution of said conveyance up to the filing of this suit, to recognize and by her silence confirm her act and deed, a period of six or seven years after attaining her majority, and defendants say that this was an unreasonable time in which to disaffirm, under said facts and circumstances, and that she is now bound by said act and deed, if not in law, then in equity and good conscience."

On the trial evidence was introduced tending to support all of the allegations of the petition, also to show that the defendants claimed as successors in title from plaintiff and her coheirs. As to the undivided 1/6th interest of the plaintiff, the evidence tended

to show the execution of a deed from the plaintiff to her brother as alleged in the defendants' answer, and subsequent conveyances to defendants under circumstances more particularly set out in the answer. The decision depended upon whether under the circumstances the plaintiff was bound by the deed executed by herself to her brother, W. P. Lewis. Bearing upon this phase of the case it will be sufficient to state the following narrative of some of the evidence: The plaintiff testified that her father died in 1894, and her mother in 1895, when plaintiff was 3 or 4 years old. W. P. Lewis was her oldest brother, and about 18 years of age. He became ".mother and father" to the other children, and reared them. Plaintiff was sent to school by her brother; she graduated at college, and afterwards became a teacher. The deed was executed the year she graduated and after she had received a license to teach, and when she was 19 years of age. She signed the deed without reading it or knowing its contents, but was informed by her brother that "he wanted to sell this place" to some people in North Georgia, "but that he could not make them a deed unless. we other children signed papers or deeds to him; but I did not know anything, only that I thought I was signing a paper for the place to be sold." The place was sold by her brother, and each of the other members of the family, including plaintiff, moved out, and the purchaser took possession and occupied the place as his home. The plaintiff visited the home of the purchaser, and never said anything to him about having given any deed to her brother, or informed him of any claim she had to the land prior to the bringing of the suit. "Pierce paid the other children their part, but I have not gotten my part. . . I have never been to anybody and demanded the land back. I have not demanded any land, but I went to Sister Kate, W. P. Lewis' wife, and asked her what she intended to do about it; she had his money, and I wanted my part of it. . . My brother, W. P. Lewis, died in 1918. . . I did not specially wait until after he died before I brought this suit. I had confidence enough in him to know he would pay me as he had the rest of the children, and I never thought of waiting until he died to try to get the money. He had told me to secure a place to put the money in, and I was to take my part of the money and put it in the place, and I never decided to buy a place while he was living, and never thought about any-

thing like that happening in the family. . . I never did decide to buy the place until after he died. . . I don't know what the consideration of the deed was; the amount named in the deed is $400. I don't know, as a matter of fact, that I and my brother decided that I owed him more than my share of the estate by at least $400, and for that reason named $400 in the deed. . . I was between 19 and 20 years old when I signed the deed. I could read and write. I had just come back from college. Certainly I could have understood well what was in the paper if I had read it. . . I received no consideration at all at the time I signed the paper. . . I have not received any consideration since for signing that paper. . . I married December 20th, 1914."

The deed from Mattie May Cook to W. P. Lewis was dated August 29, 1911, and purported to convey her undivided interest upon a consideration of $400. The deed was duly recorded on September 29, 1911. The land was conveyed by W. P. Lewis to J. E. Dempsey and E. C. Hackney by a deed dated January 4, 1912, duly recorded July 6, 1912; the consideration paid was $7,812.50. E. C. Hackney executed a deed conveying his half interest to J. E. Dempsey, dated May 4, 1913. This deed was recorded on December 24, 1919. The consideration expressed was $3,906.25. Subsequently J. E. Dempsey executed a deed conveying the property to J. W. Cochran, dated December 17, 1919, which was duly recorded on December 24, 1919. The consideration stated in the deed was $7000. The several grantees in the deeds above mentioned maintained possession by occupying the home and cultivating the farm during the terms of their several tenures. J. E. Dempsey testified: " I first learned that she claimed an interest in this lot when I received a notice sent by Mr. Geer, attorney for Mattie May Cook, to Mr. Cochran, of Arlington, Ga., which was forwarded to me, notifying Mr. Cochran that unless a certain amount was paid she would enter suit for her interest in the land." E. C. Hackney testified: " When J. E. Dempsey and I bought this land we had no notice whatever that the plaintiff had or claimed to have any claim to this land. After I moved on the land she visited my home several times, and never at any time mentioned any claim to the land. I never knew her until after I moved there, but knew her well afterwards. I did not know

that she claimed to have an interest in Lot No. 325. I never knew she claimed any interest in any of it. I did not know what her age was when I bought the land. She has never told me or notified me in any way that she claimed any interest in Lot No. 325. The first I learned that she claimed an interest in this lot was sometime after this suit was filed. I was told that she had brought suit and claimed an interest. I never heard of it until after the suit was filed." J. W. Cochran testified: "When I bought this land I did not know the plaintiff in this case, Mattie May Cook. I had never seen her as I know of. This morning was the first time I ever saw her to know her. Neither she nor anybody representing her, before I bought the land, had apprised me of any claim she had against this land. I positively did not know of any claim she might have had against this land."

The jury returned a verdict finding the land for the plaintiff, and $150 for rent for four years. The defendants made a motion for new trial, and excepted to the refusal thereof. Other facts sufficiently appear in the opinion.

*B. W. Fortson,* for plaintiffs in error. *W. I. Geer,* contra.

ATKINSON, J. 1. The ruling in the first headnote states principles of law previously decided by this court, and does not require elaboration. Civil Code (1910), § 4184; *Nathans* v. *Arkwright,* 66 *Ga.* 179.

2. It was contended that the plaintiff was estopped, by her conduct after attaining majority, from disaffirming or repudiating the deed made by her during infancy. Error is assigned upon the charge as complained of in the 15th ground of the amended motion for new trial, because it excluded that contention from consideration by the jury. Of course, if after attaining majority a grantor legally ratifies his deed executed during infancy, he will be estopped from thereafter repudiating or disaffirming it on the ground of infancy, under such circumstances as he would be bound by any other deed that he might have made after attaining majority. The case of Bigelow *v.* Kinney, 3 Vt. 353 (21 Am. D. 589), was an action of ejectment. "The plaintiff claimed under a deed from Joseph R. Williams, dated November 12, 1818; the defendant claimed under mesne conveyances from the same Williams, and proved that on the twelfth of November, 1818, the plaintiff had executed a mortgage to Williams of the same premises

deeded to him, and that two days afterward the plaintiff had executed a quitclaim deed of the premises to Williams. Williams immediately entered into possession, and in 1821 conveyed to another, who remained in possession until 1828, when he conveyed to the defendant's grantor. It appeared that at the time of the mortgage and quitclaim deed the plaintiff was a minor, and did not arive at maturity until May, 1819; that in consideration of the quitclaim deed, Williams had agreed to pay the plaintiff one hundred dollars when he sold the premises; that the money had been paid, and that the plaintiff had demanded it after he had arrived at maturity. The county judge charged that if the plaintiff was a minor when he executed the mortgage and quitclaim deed he was entitled to recover, and that the evidence did not amount to a ratification. Verdict for the plaintiff. Defendant excepted to the instructions of the court." The judgment was reversed. In the course of the opinion, among other views advanced for holding the charge upon the subject of ratification erroneous, it was said: " A deed executed and delivered by an infant, conveying land, remains good and valid until it is avoided by him; and as he alone has the power of avoiding the deed and rescinding the contract, he is bound, in reason and justice, after he comes of age and is competent to exercise a discretion upon the subject, to make his election and give notice of his intention. He ought not to be allowed to leave the grantee, upon whom the contract is binding, in a state of suspense and uncertainty; and unless he makes known his determination in a reasonable time, it is just that the contract should become absolute against him. At any rate, silence on his part while the grantee, or any one under him, is claiming, holding, and occupying under the contract, is an acquiescence from which a confirmation of the contract may be inferred."

In Hatch *v.* Hatch, 60 Vt. 160 (13 Atl. 791), it was held: " A contract by which a debt is incurred by an infant may be ratified by his express promise to pay it, made after he becomes of age; and his acts and declarations, made or performed after he has attained his majority, with deliberation and knowledge of his rights, may be of a character to constitute perfect evidence of such ratification." In the course of the opinion it was said: " There is no question but that the contract, by which a debt is incurred by an infant, may be ratified by an express promise to

pay the debt, made by the infant, when he becomes of age, deliberately and with knowledge that he is not liable by law. To this extent the cases agree. Beyond this they are not entirely harmonious, at least in the enunciation of what is required to constitute ratification. As illustrations, see Smith *v.* Mayo, 9 Mass. 62, and Whitney *v.* Dutch, 14 Mass. 457. There are many cases which hold that, although an express ratification is necessary, yet it is not required to be in the form of an express new promise. Tibbitts *v.* Gerrish, 5 Foster (N. H.) 41, and Harris *v.* Wall, 1 Exch. 122, are examples. Acts and declarations of one after attaining majority, in favor of his contract, may be of a character to constitute as perfect evidence of a ratification as an express and unequivocal promise. Mere acknowledgment of the contract, or partial payment, will not alone be sufficient. There must either be an express promise to pay, or such a direct confirmation as expressly ratifies the contract, although it be not in the language of a formal promise. Wilcox *v.* Roath, 12 Conn. 551; Gray *v.* Ballon, 4 Wend. 403; Whitney *v.* Dutch, supra. The cases in Vermont have not recognized the necessity of an express promise in terms in order to constitute ratification of an obligation incurred during infancy. Where the declarations or acts of the individual after becoming of age fairly and justly lead to the inference that he intended to and did recognize and adopt as binding an agreement executory on his part made during infancy, and intended to pay the debt then incurred, we think it is sufficient to constitute ratification, provided the declarations were freely and understandingly made, or the acts in like manner performed, and with knowledge that he was not legally liable."

Little *v.* Duncan, 9 Rich. (S. C.) 55 (64 Am. D. 760), was an action upon a sealed note for $75. Infancy of the defendant at the date of giving the note was pleaded and proved. It was further shown that after the defendant attained his majority he admitted that the giving of the note was a just transaction, and gave the plaintiff a watch in part payment, which the plaintiff was to keep if he liked it and it kept good time. The watch was returned, during the defendant's absence, to his mother. The plaintiff contended that these facts constituted an affirmance of the contract. On review the judgment in favor of the plaintiff was sustained. On the question of affirmance of the voidable

contract of the infant the court, among other things, said: " There are three modes of affirming the voidable contracts of infants : by an express ratification, by acts which reasonably imply an affirmance, and by the omission to disaffirm within a reasonable time. Curtin *v.* Patten, 11 Serg. & R. 305; Kline *v.* Beebe, 6 Conn. 494. In Chambers *v.* Wherry, 1 Bail. L. 28, a simple declaration was not enough, unless accompanied by some act which recognizes the validity of the contract. In Scott *v.* Buchanan, 11 Humph, 468, it is considered now the settled rule that in general the deed of an infant is voidable only at his election, and may be affirmed by an express ratification, or acts which reasonably imply an affirmance. In Armfield *v.* Tate, 7 Ired. L. 258, an infant was held to pay his note for purchase money of land, his subsequent act being an affirmance of original contract. In West *v.* Penny, 16 Ala. 186, I learn from an abstract of the case it was held that a verbal affirmance of a contract made during minority renders it valid from date, whether under seal or not, being in its legal effect but a waiver of the defense of infancy."

The case of Wheaton *v.* East, 5 Yerg. (Tenn.) 41 (26 Am. D. 251), was an action of ejectment. The plaintiff made a prima facie case. The defendant produced a deed from the plaintiff to himself. To destroy the effect of the deed, plaintiff proved that when he executed it he was an infant; whereupon the defendant offered parol evidence to prove that plaintiff had ratified his deed after he became of age. A judgment of the trial court for the defendant was affirmed. In the course of the opinion it was said: " A deed can not be necessary to confirm that which was executed during infancy, because that deed passed the interest in the estate, and being only voidable at the election of the infant, should he, or his heirs, fail to disaffirm it, a good title will be vested, and no other person can call it into question on account of the infancy of the grantor at the time it was executed: See 2 Kent Com. 194, and authorities there cited. Anything therefore, from which his assent, after he arrives at age, may be fairly inferred, will be sufficient to affirm the deed made during infancy, and prevent him from afterwards electing to disaffirm it. In the case before us, such inference is fairly deducible from the conduct of the plaintiff after he arrived at full age. He wanted only a few months of attaining the age of twenty-one years when he

executed the deed. A full price was paid him in money, at the time he made the deed. He was often in the neighborhood of the lot sold, after he arrived at age, and saw the defendant making large expenditures in the erection of valuable improvements, and yet he is heard to say nothing in disaffirmance of the contract for about four years. The circumstances were such as not to. excuse this long silence. But in addition to the absence of any act of disaffirmance, he, on several occasions, said he had sold the lot, had been honorably paid for it, and was satisfied. He also authorized a proposition for its purchase to be made to the defendant. These circumstances fully warranted the jury in coming to the conclusion that he had affirmed the contract, and precluded him, after all this, from setting up his infancy to avoid it."

For other decisions on the general subject see cases cited in a note to Craig *v.* Ban Bebber, 18 Am. St. R. 569, 675, 688 (100 Mo. 584, 13 S. W. 906). It is not necessary for the purposes of this case to go the full extent of all that is quoted from the foregoing decisions; but it may be stated as a rule, that if an infant executes a deed, he may after attaining majority affirm it by acts which reasonably imply an affirmance, and after such affirmance he will be estopped from avoiding the deed on the ground of his infancy at the time of its execution. The evidence tended to show, among other things, that plaintiff, an educated woman 19 years of age, executed her deed to her brother for the purpose of enabling him to sell her interest in the land to third persons. The deed did not disclose infancy of the grantor, stated a fair consideration, and was duly recorded. The grantee sold the land upon a full consideration to purchasers without notice of the plaintiff's infancy, who with their successors retained possession and occupancy of the property without notice of such infancy until the plaintiff was 27 years of age. The plaintiff was fully aware of the fact of the sale by her brother and the subsequent sales of the purchasers from him, and of their several possessions and occupancy of the property. After her attainment of majority, with knowledge of the facts above stated the plaintiff visited the home of the purchasers, which was the property conveyed in part by her deed, and did not at any time intimate to them the fact that she was an infant at the time her deed was executed or that she claimed an interest in the property. Her

interest in the money received from the sale of the land was retained by her brother under a parol agreement with plaintiff, after her majority, that he would hold it for her for reinvestment in other property when she should select another investment. She failed to make the selection, and on account of such failure her brother did not make any investment. After the death of her brother the plaintiff demanded the money from his widow, and, after refusal by the widow, instituted the action on the basis of a disaffirmance of her deed. Such conduct upon the part of plaintiff after her attainment of majority, in agreeing with her brother that he should hold her part of the money for reinvestment, was a clear recognition of the sale and affirmance of her deed; and the jury would have been authorized, in the circumstances, to have found that there was an implied affirmance of the deed, and that the plaintiff was estopped from avoiding the sale.

3. As a reversal will result from the ruling in the preceding division, no ruling will be made as to the sufficiency of the evidence to support the verdict. Other assignments of error, based on rulings complained of in the amendment to the motion for new trial, are without merit and not of such character as to require elaboration.       *Judgment reversed. All the Justices concur.*