## DORSEY v. RECONSTRUCTION FINANCE CORP.

No. 49 C 1515.

United States District Court
N. D. Illinois, E. D.
Nov. 29, 1951.

198

John J. Dowdle, Chicago, Ill., for plaintiff.

Lee Walker, Lawrence T. Manning, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

Plaintiff originally brought this action against the defendant to recover damages in the amount of $125,000 occasioned by (1) the alleged wrongful mishandling by defendant of collateral given to secure certain notes executed by plaintiff to the National Bank of the Republic of Chicago and subsequently assigned to defendant; (2) the failure of defendant to surrender to plaintiff certain collateral and money allegedly remaining in its possession after plaintiff's debt had been paid in full. Defendant denies liability and counterclaims for an unpaid balance on the plaintiff's indebtedness, as well as for the full amount of two judgments heretofore entered against plaintiff in 1937 in favor of defendant.

Both parties filed motions for summary judgment, which motions were denied by the Court in a memorandum opinion dated March 8, 1951, 96 F.Supp. 31. Subsequently, the cause was tried upon the merits, without a jury, after which the matter was taken under advisement upon the briefs of the parties.

At the trial of the case, Dorsey abandoned his charge of arbitrary handling of the

collateral by RFC, and reduced the amount of the judgment sought to be obtained from $125,000 to $56,309.21. The reduced amount represents the damages alleged to have been sustained by Dorsey as the result of RFC's failure to surrender money and collateral remaining after his debt had allegedly been paid in full.

The source of the indebtedness was the execution, on March 26, 1931, by Dorsey of three 30-day notes to the Bank in the principal amounts of $85,694.45, $5,689.71 and $1,329.69. The first two notes were executed by plaintiff personally, and the third was executed by Victor A. Dorsey & Co., but personally guaranteed by plaintiff. Dorsey arrives at the figure of $56,309.21, as the sum due and owing to him, by eliminating from consideration of the accounts, the following amounts: (1) $11,000, which represents the indebtedness for the purchase price of 60 shares of the Bank's stock and which was consolidated in the note for $85,694.45. He asserts that the sale of stock was void as being in violation of 12 U.S.C.A. § 83 and that the indebtedness under said note should have been reduced by that amount; (2) $9,480.45, which represents a charge-back to his account, resulting from garnishment proceedings whereby the Bank was obliged to refund said sum to creditors of Dorsey & Co., see Dorsey & Co. v. Central Republic Trust Co., 277 Ill.App. 126; (3) Funds used by RFC to retire Dorsey's note for $5,689.71, for the asserted reason that the collateral was not intended to secure said note and, in addition, that the note was barred by the Statute of Limitations.

█ Plaintiff's conclusions cannot be sustained. In the first place, as indicated in 96 F.Supp. 31, the $11,000 debt is not, and was not, void as being violative of the provisions of 12 U.S.C.A. § 83. That statute prohibits a national bank from making any loan or discount on the security of its own stock, and it is patent from plaintiff's own pleadings that no loan was effected between him and the Bank. In other words, it was merely a transaction for the purchase of the Bank's stock, with the Bank retaining possession of the stock until such time as Dorsey should pay the

note executed for the purchase of said stock. Furthermore, plaintiff has adduced no cogent proof that the $11,000 debt was consolidated into the $85,694.45 note.

█ The matter of the $9,480.45 charge-back was similarly disposed of in 96 F. Supp. 31, 35, wherein it was stated: " * * it is difficult to perceive how plaintiff can legitimately claim that the original credit rendered to his account would constitute a good and irrevocable payment. It appears to the Court that it was no more than an illusory payment, and the fact that defendant's assignor rendered the credit to plaintiff and was subsequently obliged to turn over certain sums to the garnishment creditors of Victor A. Dorsey & Co. should not estop defendant from asserting the resultant debit." Nothing was presented by plaintiff in the trial to dissuade the Court from that view.

█ As to plaintiff's plea of the Statute of Limitations as a defense to the $5,689.71 note, it is true that the previous Memorandum indicated that the Statute might properly prohibit enforcement of said indebtedness. The RFC now contends that the defense of the Statute cannot validly be interposed in litigation of a claim asserted by the RFC which, as a governmental agency created by Act of Congress, acts in a sovereign capacity. This position is untenable for the reason that the RFC was created by Congress to carry out certain proprietary and commercial activities of the Government, as opposed to sovereign functions. See R. F. C. v. Menihan Corp., 1940, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595; U. S. v. Brown, D.C.Fla.,1941, 41 F. Supp. 838; and R. F. C. v. Foster Wheeler Corp., D.C.Tex.,1947, 70 F.Supp. 420.

However, the RFC successfully avoids the plea of the Statute by demonstrating the existence of a valid account stated between the parties. (Defendant urged the same ground in support of its claim in its motion for summary judgment, but the Court declined to make a determination of the matter at that time, since it had not pleaded in either the answer or counterclaim. Prior to trial, however, defendant amended its pleadings so as to allege an ac-

count stated.) Documentary evidence shows that on February 21, 1944 and again on June 22, 1944, Dorsey wrote letters to the RFC, suggesting that before any changes were made in his collateral account, a statement of account should be furnished to him, "showing debits and credits", since the account came into the hands of the RFC. Pursuant to this request, the RFC prepared, on November 7, 1944, a detailed statement of all transactions which had taken place in the account from the time the RFC acquired the collateral until September 30, 1944. This statement was mailed to John G. McDonald, then acting as attorney for Dorsey. (It is admitted that McDonald transmitted the statement of account to Dorsey.) The account shows a total principal and interest balance due, as of September 30, 1944, in the amount of $50,980.57. All three notes are described in the statement. No written objections were ever made with regard to the statement of account, nor has the plaintiff ever made any effort to point out any inaccuracies which might, in his estimation, have been included in the account. He has, in fact, adopted the information contained in the statement to support his claim for a refund, omitting, however, the $11,000 item, the $9,480.45 charge-back, and the note in the amount of $5,689.71.

 An account stated is an agreement between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance. In stating an account, as in making any other agreement, the minds of the parties must meet. The meeting of the minds of the parties upon the correctness of an account stated is usually the result of a statement of account by one party and an acquiescence therein by the other. The form of the acquiescence or assent is, however, immaterial, and may be implied from the conduct of the parties and the circumstances of the case. Where an account is rendered by one party to another, and is retained by the latter beyond a reasonable time without objection, this constitutes a recognition by the latter of the correctness of the account and establishes an account stated. An account stated is in the nature of a new promise or undertaking, and raises a new cause of action between the parties. See Pure Torpedo Corp. v. Nation, 1945, 327 Ill.App. 28, 63 N.E.2d 600. It should be readily apparent that all the conditions for an account stated are present in the case at bar, and that plaintiff is in no position to object, either to the computations or to the inclusion therein of the amount represented by the note for $5,689.71.

It should be noted further that, at no time, has plaintiff interposed a valid defense to the claim for $1,000, representing the two judgments entered against him in 1937 in favor of the defendant.

For the foregoing reasons, the complaint is hereby dismissed and judgment will, therefore, enter in favor of Reconstruction Finance Corporation on its counterclaim with interest and costs. Defendant and counterclaimant is directed to submit to the Court, within 15 days hereof, a judgment proper as to form.