Ouida J. WEISSINGER a/k/a Ouida Boyd and Mrs. George Boyd, Appellants,

v.

UNITED STATES of America, Appellee.

No. 24639.

United States Court of Appeals Fifth Circuit.

Oct. 9, 1968.

T. Paine Kelly, Jr., Charles W. Pittman, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellants.

John C. Eldridge, Jack H. Weiner, Stephen R. Felson, Attys., Dept. of Justice, Washington, D. C., Carl Eardley, Acting Asst. Atty. Gen., Edward F. Boardman, U. S. Atty., for appellee.

Before RIVES and GODBOLD, Circuit Judges, and HUGHES, District Judge.

RIVES, Circuit Judge:

This appeal is from a summary judgment for the balance due on guarantees of two Reconstruction Finance Corporation (R.F.C.) loans. On appeal the contentions are that the district court erred in holding: (1) that the R.F.C. and its successor, the S.B.A. (Small Business Administration), are not subject to state statutes of limitations; (2) that the words "any extension" mean "all extensions"; (3) that appellant had waited too long to disaffirm her guaranty of the first loan executed when she was 20 years of age; (4) that a prior judgment was not a bar. The main contention of error is based on the contention which we have listed last. The first three contentions may be readily answered.

■■ 1. State statutes of limitation do not apply to the federal government.[1] In an R.F.C. case the Seventh Circuit has apparently indicated to the contrary.[2] However, our Fifth Circuit has held that the R.F.C. is not subject to a state statute of limitations.[3] The Second Circuit is in accord with the Fifth.[4] We adhere to our holding that in the absence of a waiver state statutes of limitation do not apply to the federal government, regardless of whether the government operation is characterized as "sovereign" or "proprietary."

■ 2. In certain contexts, some courts have held that "any extension" of time is limited to a single extension.[5] The waiver of notice contained in the guaranties sued on does not permit of such a construction:

"The undersigned hereby grants to Reconstruction Finance Corporation full power, in its uncontrolled discretion and *without notice to the undersigned,* * * * to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

"(a) To modify or otherwise change any terms of all or any part of the Liabilities * * *, *to grant any extension or renewal thereof* and any other indulgence with respect thereto * * *;

"(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities * * *, and to change the terms of any such agreement." (Emphasis added.)

Without belaboring all of the parts of that general and unconditional waiver, we find it impossible to distinguish between granting a "renewal" of an extension and granting a second extension.

■ 3. The guaranty of the first loan was signed about six months before the appellant reached her majority and the guaranty of the second loan about six months after her twenty-first birthday. She waited almost twelve years after reaching her majority before attempting to disaffirm. The appellant was a limited partner in the enterprise which received the R.F.C. loan. She claims that Georgia law applies to this question. Conceding that arguendo, the Georgia courts hold as to the defense of infancy that one cannot disaffirm a contract seven years after becoming of age.[6] Clearly, the appellant waited too long before attempting to disaffirm.

4. We come then to appellant's main defense, viz.: that a judgment rendered by the same court some ten months before this complaint was filed bars the present action. On its surface that appears to be a perfect defense. The actions were between the same parties on the same contracts of guaranty. The former action was tried on its merits, and resulted in a judgment in the following form:

"THE COURT *having this day entered its findings of fact and conclusions of law* in this cause and being

I. United States v. Summerlin, 1940, 310 U. S. 414, 417, 60 S.Ct. 1019, 84 L.Ed. 1283 (Federal Housing Administrator).

2. Dorsey v. Reconstruction Finance Corp., N.D.Ill.1951, 101 F.Supp. 197, 199, aff'd 7 Cir. 1952, 197 F.2d 468.

3. United States v. Borin, 5 Cir. 1954, 209 F.2d 145, 148, 149; Alger v. United States, 5 Cir. 1958, 252 F.2d 519, 520; see other cases collected in Key Numbered Digests under Limitation of Actions, § 11 (1); accord, Nabors v. NLRB, 5 Cir. 1963, 323 F.2d 686, 688.

4. United States v. 93 Court Corporation, 2 Cir. 1965, 350 F.2d 386, 389.

5. Tuten v. Bowden, 1934, 173 S.C. 256, 175 S.E. 510, 513, 94 A.L.R. 1443; Matchett v. Anderson Foundry & Machine Works, 1902, 29 Ind.App. 207, 64 N.E. 229, 230; Annot., 94 A.L.R. 1447.

6. Holbrook v. Montgomery, 1928, 165 Ga. 514, 141 S.E. 408, 409; McGarrity v. Cook, 1922, 154 Ga. 311, 114 S.E. 213, 215; Nathans v. Arkwright, 66 Ga. 179, 188.

fully advised in the premises, it is, upon consideration,

"ORDERED, ADJUDGED and DECREED:

"That the complaint and cause of action of the plaintiff be, and the same is hereby, *dismissed with prejudice;* and it is further

"ORDERED, ADJUDGED and DECREED:

"That judgment be, and it is hereby, entered in favor of the defendant, Ouida J. Boyd, and against the plaintiff, United States of America, and that said defendant *go hence without day * * *.*" (Emphasis added.)

■ Of course, however, the effect of the judgment as res judicata must be determined not from the judgment alone but by the aid of the entire record.[7] In Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 295, 63 S.Ct. 1070, 1071, 87 L.Ed. 1407, the Supreme Court cited several decisions in support of its statement that "The formal judgment ordered dismissal of the suit, but it is to be interpreted in the light of the court's opinion, findings and conclusions of law."

■ When we examine the findings of fact and conclusions of law upon which that judgment was based, we find that the defendant in her answer claimed many legal defenses, including the three already described in the present opinion. The district court entered full findings of fact and conclusions of law as to the various claimed defenses and ruled against the defendant as to each of them, except the eleventh and last as listed in defendant's answer. On that defense the district court concluded as follows:

"That it further appears to the Court, in regard to the eleventh defense, that the guaranty agreements upon which this action is based expressly provide that a written demand be made upon the guarantors by the

Reconstruction Finance Corporation as a condition precedent to payment of any amount due under the agreements. The latter (sic) mailed by the Small Business Administration to the defendant at Tiger, Georgia, was not delivered to the defendant and cannot be construed as a demand upon her within the meaning of the agreements. There was not (sic) other notice attempted to be served upon this defendant. Further, the service of the complaint was not a written demand within the meaning of the foregoing provision. Therefore, the Small Business Administration has failed to comply with the provision requiring a written demand upon the defendant; and the action should be dismissed.

"Judgment in accordance with the foregoing is being entered by the Court."

Pursuant to the findings and conclusion on this eleventh defense, the judgment was entered in which the action was "dismissed with prejudice." When the record shows that the action was dismissed for a reason which does not touch the merits, the addition of the quoted phrase cannot change the facts and preclude the plaintiff.[8]

The government sent another demand letter to appellant which was delivered in due course. The government then filed a new complaint substantially identical to the old one, except that the new demand was specifically alleged. Appellant's answer was substantially the same as her answer in the first action, except that an additional defense was interposed, that of res judicata. Each side moved for summary judgment. The district court held that the judgment in the first action was not res judicata in the second action. That judgment appears clearly correct.

■■ In order for a prior judgment to bar a subsequent action, the first judgment must, of course, be "on the

---

7. 30A Am.Jur. Judgments, § 457, p. 501; 50 C.J.S. Judgments, § 842, p. 409.

8. Chirelstein v. Chirelstein, 12 N.J.Super. 468, 79 A.2d 884, 888.

merits."[9] As said in section 49 of the Restatement, Judgments: "Where a valid and final personal judgment not on the merits is rendered in favor of the defendant, the plaintiff is not thereby precluded from thereafter maintaining an action on the original cause of action and the judgment is conclusive only as to what is actually decided."

It is perfectly clear from the record that the district court in the first action decided only two issues against the government: (1) that a written demand was a condition precedent to the bringing of an action on the guaranty agreements, and (2) that such a demand had not been made. The prior judgment is conclusive against the government only as to those two issues.

■ Appellant relies upon that part of Rule 41(b), Fed.R.Civ.P., which provides: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction * * * operates as an adjudication upon the merits." The order for dismissal construed in the light of the findings of fact and conclusions of law "otherwise specifies." Further, the Supreme Court has held that dismissals "for lack of jurisdiction" as that phrase is used in Rule 41(b) include "those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim." Costello v. United States, 1961, 365 U.S. 265, 285, 81 S.Ct. 534, 545, 5 L.Ed.2d 551.

There is no merit to any of the appellant's four contentions. The judgment is therefore

Affirmed.

GODBOLD, Circuit Judge (dissenting):

I respectfully dissent.

The majority reach a conclusion wholly inconsistent with the purposes of and the policies behind the law governing the effect of a personal judgment upon a subsequent action between the same parties.

In May, 1952 the Reconstruction Finance Corporation loaned $200,000 to E. L. Weissinger Lumber Company, Ltd., a limited partnership. The loan was secured by various collateral. Appellant, together with four other female members of the family, executed a separate written guaranty of payment of the partnership's note to RFC. Appellant was then 20 years of age and recently married. There was oral testimony below that she had signed the partnership agreement as a limited partner, but had made no investment in the partnership and had no duties concerning it. In 1952 she received $200 from the partnership for services rendered. Her father, and possibly her brother, were general partners.

In April, 1953, after appellant had reached her majority, RFC made a second loan to the partnership, for $50,000, and appellant executed a separate guaranty of payment of that note. Each guaranty was on an RFC form. Appellant was not an indorser or maker of either note.

Appellant taught school from 1951 to 1957. She divorced her husband in the 1950's, subsequently remarried, and in 1960 moved to Florida where she has since continuously resided. Until she moved to Florida appellant resided at or near the place of her birth and residence of her parents in Georgia. Her address in Florida, after she removed there, was a matter of common knowledge among her family and acquaintances in Georgia, and at no time did she attempt to secrete herself or hide her identity.

The last payment made on the $200,000 loan was in October, 1963 and on the $50,000 loan in October, 1960. The Small Business Administration, successor in

9. Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122; Cromwell v. County of Sac., 1876, 94 U.S. 351, 352, 24 L.Ed. 195.

interest to RFC, completed realizing on collateral December 31, 1963 and at that time established principal balances of $23,165.94 on the large loan and $38,-750.00 on the small loan. It is not clear when the notes became delinquent, but it was before April, 1962.

Each guaranty instrument contained a specific provision requiring demand for payment be made on the guarantor:

> In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of Reconstruction Finance Corporation, will pay to Reconstruction Finance Corporation the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned. Reconstruction Finance Corporation shall not be required, prior to any such demand on, or payment by, the undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral. The undersigned shall have no right of subrogation whatsoever with respect to the Liabilities or the collateral unless and until Reconstruction Finance Corporation shall have received full payment of all the Liabilities.

In April, 1962 SBA sought to make the requisite demand on appellant, by a registered letter sent to her last known address in Georgia. It was returned to the sender by the Post Office marked "Moved—Left No Address."

In June, 1963 an employee of SBA personally ascertained appellant's address and whereabouts in Florida. In 1964 SBA verified by a Dun & Bradstreet report that appellant was residing in Florida at the address discovered in June, 1963. At no time did the government attempt to make demand on appellant other than the abortive letter of April, 1962.

In May, 1964 the government sued appellant on the two guaranties. It alleged that it had made demand on her for immediate payment in accordance with provisions of the guaranties and that she had failed to comply therewith. At that time the government's own files showed there had been no such demand, as the returned letter of April, 1962 was in its possession.

Appellant joined issue on the allegation of demand. By motion to file additional defense, filed January 18, 1965, she asked leave to file an Eleventh Defense which included the defense that no written demand had been made upon her as required by the guaranty agreements. (The record does not show when leave was granted and the defense actually filed.) After pretrial, apparently in mid-March, the case was tried April 26, 1965. Thus after notice that appellant would assert a defense of no demand the government had more than three months before the trial in which to make written demand and either amend or dismiss and refile the complaint. It did none of these things.

When the case came to trial counsel for appellant vigorously and insistently asked a continuance.[1] At trial the government sought to prove that appellant had hidden out and concealed her whereabouts, an issue on which it lost. After trial the parties wrote briefs and proposed findings of fact. On October 22, 1965 the court entered its findings of fact and conclusions of law, finding in favor of the government on all the numerous issues except that of demand, with respect to which it found for appellant, and entered the final judgment quoted in the

---

1. For failure of the government to produce documents as previously ordered by the court, a failure which the court recognized had occurred but considered not sufficiently prejudicial to require a continuance of more than one day. The missing documents did not relate to the issue of demand.

majority opinion. No appeal was taken by the government from the judgment or other action taken to alter or amend the terms.[2] Instead the government made written demand in June, 1966 to appellant at her Florida address and filed a new suit based thereon. Appellant answered, interposing many of the defenses raised at the first trial plus the defense of res judicata. The motion of appellant for summary judgment was denied and the cross-motion of the United States for summary judgment granted.

It helps in understanding this case to take a look at the substantive law of guaranty. A guarantor is entitled to have a demand made upon him for payment when express provision is made therefor. First Nat'l Bank v. Story, 200 N.Y. 346, 93 N.E. 940, 34 L.R.A.,N.S., 154 (1911); Lewis v. Esch, 155 Misc. 212, 279 N.Y.S. 77 (Delaware County Ct. 1935); Stearns, Suretyship, §§ 7.16 & .18 (Elder ed. 1951).[3]

In this case the requirement of demand on the guarantors was the only form of notice required to be given them of the debtor's default. The purpose of notice of default is to alert the guarantor that he is relied upon for payment, to notify him of the amount of the debt, to give him an opportunity to persuade the debtor to pay and to obtain security from the debtor if possible before the debtor's financial situation deteriorates further, and to give him an opportunity to pay

without suit if he desires. The purpose of the requirement of notice to the guarantor of the debtor's default is to protect the guarantor's interest. Molina v. Munoz, 31 F.2d 727 (1st Cir. 1929); Boorstein v. Miller, 124 N.J.Eq. 526, 3 A. 2d 87, 91 (Ch.1938); 38 C.J.S. Guaranty § 63 (1943); 38 Am.Jur.2d Guaranty § 103 (1968). This is but a part of the general law that when a guarantor attaches conditions to his agreement the failure of the creditor to comply strictly makes the guaranty unenforceable. Lakemore Plaza, Inc., v. Shoenterprise Corp., 188 N.E.2d 203 (Ohio Com.Pl.); Yama v. Sigman, 114 Colo. 323, 165 P.2d 191 (1946) (en banc); Poole v. Corker, 15 Ga.App. 622, 83 S.E. 1101 (1915); D. T. Williams Valve Co. v. Amorous, 19 Ga.App. 155, 91 S.E. 240 (1917); Continental Nat'l Bank of Los Angeles v. Tremont Trust Co., 4 F.2d 219 (1st Cir. 1925).

The indispensability of the demand is not in dispute, because in the first case the district court held that demand was a condition precedent to liability and that no demand had been made, and the judgment was not appealed from. Demand is not a procedural nicety or a matter of convenience but a substantive part of the government's cause of action. The government having joined issue on that substantive issue and judgment having been entered against it thereon, it cannot relitigate its claim based on a new and

---

2. However, government counsel argues to us that had it appealed it would have been successful in obtaining a reversal of the finding by the district court that the filing of suit was not a demand.

3. "While there was an absolute promise to guarantee prompt payment at maturity, still the guarantor had the right to contract that his liability should not mature until a demand had been made upon him, which would make the demand a condition precedent to the right to recover. A surety may desire to have notice of the amount of his principal's default and a chance to pay without suit, and he may so stipulate. * * * [T]here is no promise to pay 'in case of default' except 'on demand.'

* * * * *

"I think that, when a promise is to pay one's own debt on demand, none is required, because the law implies a promise to pay and the express promise forms no part of the consideration and adds nothing to the obligation. When, however, the promise is not to pay one's own debt but the debt of another yet to come into existence, on demand, there is no precedent duty, and the obligation to pay rests wholly on the promise in the form made, and the promise is binding only in the form made.

* * * * *

"When the promise to pay on demand is not to pay one's own debt, but is a collateral promise to pay the debt of another, a demand is necessary for it is part of the cause of action." First Nat. Bank v. Story, 93 N.E. at 942.

subsequent demand. The first judgment was a valid and final personal judgment on the merits in favor of defendant. Restatement of Judgments § 48 (1942). "If the judgment determines that the plaintiff has no cause of action, it is on the merits." Id. § 49, comment a.

The government places primary reliance on § 54 of the Restatement of Judgments, providing

> Where a judgment is rendered for the defendant on the ground of the non-existence of some fact essential to the plaintiff's cause of action, the plaintiff is not precluded from maintaining an action after such fact has subsequently come into existence.

But the general language of § 54 does not hit the more specific target presented by the case before us. The guide is aptly phrased at 50 C.J.S. Judgments § 628 (1947):

> A judgment for defendant, or an order dismissing the action, for the reason that it was prematurely brought, will not bar another action for the same cause when the right of action becomes complete. This is true whether the action is premature because plaintiff has failed to perform some preliminary act necessary to perfect the cause of action, such as making demand before suit, giving notice of claim, furnishing security for costs, or paying the costs of a previous action as ordered, or because the amount claimed is not yet due.

> Such a judgment finally and conclusively settles the point that the action was prematurely brought, and this question cannot be relitigated in a new action. *Where, however, objection is made that the suit was prematurely brought, the debt not being due, but plaintiff nevertheless proceeds further with the suit, a judgment for defendant may constitute a bar to another action after the debt matures.* (Emphasis added.)

In some circumstances by reason of an external bar of time, or of an event other than what plaintiff himself must do, his cause of action may not be accruable, such as a note sued on before due or a tax refund suit filed before expiration of the statutory time allowed for administrative action on a tax refund claim. In such a case it is beyond plaintiff's power to make his cause of action viable. It is fair to plaintiff and neither unfair nor oppressive to other litigants and the courts to give him an opportunity to pursue his cause to judgment after it is within his power to make the cause viable.

Or, if plaintiff's cause of action is otherwise existent but enforcement of it is stayed until he satisfies some preliminary condition, and satisfaction of the condition is within his power, and issue is not joined and full trial had on whether he has or has not satisfied the condition but instead his failure appears at trial, it is possible that he should be allowed to satisfy the condition and try again. We need not decide that in the present case.

None of these situations reach the case before us, and § 54 is not directed to the situation before us, where the cause of action was accruable at any time the plaintiff acted, there was no external bar of time or event other than what the plaintiff himself must do to make his cause viable, the plaintiff's action was a substantive part of the cause, the plaintiff alleged he had taken the required action, the defendant denied plaintiff had acted, with adequate time, knowledge and opportunity the plaintiff continued its failure to act, there was a full-blown trial with evidence on this very issue, the plaintiff lost and elected not to appeal. No policy supports letting that plaintiff have a second bite. Giving the plaintiff a fair chance on events that will arise in the future is one thing. It is something else to give him one (or more) chances on the claim that the events already have occurred in the past, while he reserves at all times the right to come back later after an adverse decision and create the alleged events by subsequent occurrence.

To fail to treat as a bar the first judgment in this case loses sight of what res judicata is all about. If the government's position is correct it could have mailed the appellant a second and undelivered demand letter—or made no effort even to do that—sued a second time, joined issue on whether demand had been made, suffered judgment against it again for want of demand, then sued a third time without bothering to give demand, and so on ad infinitum, always insulated by a combination of prematurity of suit, freedom from statutes of limitation, and no estoppel against the government. The government would be free to tie up courts and litigants at will, never bound by the adverse result, until such time as it gets around to giving the demand agreed upon and required by law. This is, of course, absurd. The cut-off has to come somewhere, and it comes after the first adjudication, for the government as for any other litigant.[4]

Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961)[5] carefully delineates two types of situations, those in which the defendant must incur the inconvenience of preparing to meet the merits because there is no initial bar to the court's reaching them, and those in which the plaintiff fails to comply with a precondition requisite to the court's going forward to determine the merits of the substantive claim. In the former situation, because of the underlying policy reasons, it held a judgment of dismissal a bar unless the court "otherwise specifies." (*A fortiori* a judgment of dismissal in such a situation is a bar if, as it was here, specified to be with prejudice.) The former situation is that of appellant. Demand was not a precondition to reaching the merits but under the law of guaranty a part of the cause of action. Appellant had to prepare to meet all issues including demand, went to trial on all issues after strenuous insistence on a continuance, adjudicated every issue, and lost every issue except one.[6]

This circuit has drawn a clear line between on the one hand, the fact alleged as part of the cause of action, preventing the complaint from being demurrable, and litigated as part of the cause of action, which precludes relitigation of the

---

4. "If [plaintiffs] are to be allowed two bites at a cherry, they should be allowed six. The reductio ad absurdum becomes evident upon its mere statement."
Hatchitt v. United States, 158 F.2d 754, 757 (9th Cir. 1946).
"[The plaintiff] again asserts title to the very property that was the subject of the other suit, the source of title, only, being different. If this may be done, how often may it be repeated? If defeated upon the new title, may plaintiff in error assert still another one, either in its predecessor or in itself, and repeat as often as it may vary its claim? The principle of *res judicata* and the cases enforcing and illustrating that principle declare otherwise."
Northern Pacific R. Co. v. Slaght, 205 U.S. 122, 133, 27 S.Ct. 442, 445, 51 L.Ed. 738, 742 (1907).
See also Werlein v. City of New Orleans, 177 U.S. 390, 285 S.Ct. 682, 44 L. Ed. 817, 821 (1900); Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).

5. In *Costello* the district court declined to dismiss "with prejudice" and entered an order of dismissal not stating whether with or without prejudice. Hence the Supreme Court was applying Fed.R.Civ.P. 41(b) relating to construction of a dismissal order where the district court in its order has not "otherwise specifie[d]." The order before us "otherwise specifies," nevertheless the opinion is helpful.

6. Appellant interposed in the second case numerous defenses which had been raised in the first case. Many of these raised questions of law, but one was an issue of fact, whether appellant had signed either or both guaranty agreements when a minor and whether she had timely disaffirmed after her majority. In the first trial the court decided against appellant on this issue based on findings of fact. In the second trial the cross-motion of the United States for summary judgment was granted on the basis of the complaint and an affidavit by an SBA official stating the amounts due. There was no way in which fact issues of minority and disaffirmance could be eliminated as material issues in dispute except by giving res judicata effect to the findings of fact against appellant in the first case.

existence of the fact, and on the other hand, the fact omitted from the first action which omission made the complaint deficient. In Estevez v. Nabers, 219 F.2d 321 (5th Cir. 1955), this court said:

> Although some courts seem to have held that the mere existence of facts in the second action not present in the first makes the principle of res judicata inapplicable, e. g., Pippin v. United States, 74 App.D.C. 131, 121 F.2d 98, we believe this criterion is clearly incorrect. See Hatchitt v. United States, 9 Cir., 158 F.2d 754; Buchanan v. General Motors Corp., 2 Cir., 158 F.2d 728; The B. & B. No. 10, 2 Cir., 121 F.2d 704; "Developments in the Law —Res Judicata," 65 Harv.L.Rev. 818, 826. We recognize, on the other hand, that in some situations a second action is not barred by a former judgment when the complaints are identical save for the inclusion of certain additional facts in the second complaint. For example, if the complaint in the later action contains further allegations, the omission of which made the complaint in the first action demurrable, the judgment in the first action is not a bar to the second action, even though the plaintiff has failed to avail himself of permission to amend.

> \*   \*   \*   \*   \*   \*

> The cardinal principle is that the second action is precluded unless the new allegations supply a material deficiency of the complaint in the first action. 219 F.2d at 323.

In the case before us there were no additional facts included in the second complaint "the omission of which made the complaint in the first action demurrable," and the new allegations did not "supply a material deficiency of the complaint" in the first action. Issue was joined and a trial had on a sufficient complaint.

Between the two statements quoted above the *Estevez* court referred to the principle now asserted by the government.

> Likewise, where a judgment was rendered for the defendant on the ground of the nonexistence of some fact essential to the plaintiff's cause of action, a second action is not barred after such fact has subsequently come into existence. West v. American T. & T. Co., 6 Cir., 121 F.2d 142, certiorari denied 314 U.S. 672, 62 S.Ct. 138, 86 L.Ed. 537; Radick v. Underwriters at Lloyd's, London, 7 Cir., 137 F.2d 21; Restatement, Judgments, Sec. 54. See also Safeway Stores, Inc. v. Porter, supra, Em.App., 154 F.2d 656.

219 F.2d at 323. The court's reference to non-existence of a fact which subsequently comes into existence cannot mean the "once-tried fact," the present existence of which has been pleaded, issue joined on existence versus non-existence, and trial had on that issue. If the court meant any fact, including the "once-tried fact," the heart is cut from the court's conclusion (stated twice) of what it considered the cardinal principle. The cases cited by Judge Tuttle are discussed in the margin.[7]

---

7. In Safeway Stores, Inc. v. Porter, 154 F.2d 656 (Emer.Ct.App.) cert. denied, 328 U.S. 863, 66 S.Ct. 1367, 90 L.Ed. 1633 (1946), plaintiff had earlier attacked the validity of a government price regulation (Safeway Stores, Inc. v. Bowles, 145 F.2d 836 (Emer.Ct.App.1944), cert. denied, 324 U.S. 847, 65 S.Ct. 683, 684, 89 L.Ed. 1408 (1945)), and the regulation was held valid. In the second case plaintiff attacked the regulation, as amended by an amendment issued almost contemporaneously with the decision in the first case. Administrative protest of the regulation as amended was not denied until a year after the decision in the first case. The court cut through the fact that there had been subsequent events, and, reaching the fundamentals, held that substantially the same objections were made by plaintiff to the amended regulation as to the original and that it was estopped to raise a second time points that already had been decided against it.

In the protracted *West* controversy, see West v. American Tel. & Tel. Co., 121 F.2d 142 (6th Cir.) cert. denied, 314 U.S. 672, 62 S.Ct. 138, 86 L.Ed. 537 (1941), after long and complex litigation the plaintiffs were allowed to proceed in federal

In Clouatre v. Houston Fire & Cas. Co., 229 F.2d 596 (5th Cir. 1956), the first case was *dismissed for failure to allege* that plaintiff had secured a judgment against an insured, erroneously thought to be a condition precedent to suit against the insurer. This was not res judicata to enforcing against the insurer subsequently obtained judgments against persons covered by the policy.[8]

Fujii v. Dulles, 259 F.2d 866 (9th Cir. 1958), is in the same pattern. In the first case plaintiff's complaint was *insufficient for failure to allege* administrative denial of a passport. He amended to allege there had been adverse administrative action. The amendment was stricken on motion on the theory that the administrative action occurred after suit was filed and the amendment could not relate back, and the action was dismissed for failure to state a cause of action. The second case was dismissed on the ground the first was res judicata. On appeal this was reversed, the court pointing out that all the first case decided was the pleading matter of the necessity of alleging prior adverse administrative action.

The foregoing discussion has been without regard to Rule 41(b), Fed.R. Civ.P. The majority's circumvention of that rule is disquieting. Rule 41(b) evidences the federal policy that judgments of involuntary dismissal are final except in named circumstances.[9] It is a direct

---

court for conversion of stock certificates and to allege and prove demand for the certificates as a necessary incident of their cause of action, although long before they had secured a state court judgment for the same alleged conversion which had been reversed for want of demand. This they could do, it was held, because in the original state court such demand had not been made an issue, it being neither pleaded nor proved.

In Radick v. Underwriters at Lloyd's, London, 137 F.2d 21 (7th Cir. 1943), it does not appear whether in the first action plaintiff alleged, defendant denied, and trial was had, on the preconditions (the issuance of executions on all judgments and return of judgments unsatisfied for particular reasons). If *Radick* means a second trial after those issues have been pleaded and tried out it is inconsistent with *Estevez* and *Safeway.*

8. This Circuit's decision in Tademy v. Scott, 157 F.2d 826 (5th Cir. 1946), involved only one suit and has nothing to do with res judicata. It concerned the correction by this court on appeal, of a judgment that was entered as a general judgment for defendant on the merits when it should have been a dismissal without prejudice for failure to give a notice and opportunity for retraction and apology, which notice was a condition precedent to bringing an action for libel but was not a part of the cause of action. The action taken by appellant in that case is what the government should have done in the present case if dissatisfied with the judgment of dismissal with prejudice.

9. Nasser v. Isthmian Lines, 331 F.2d 124 (2d Cir. 1964), was the second action for the same alleged wrong. The first action was dismissed when plaintiff failed to answer interrogatories. The order of dismissal did not "otherwise specify" that the dismissal was without prejudice. In the second action plaintiff was faced with the defense of res judicata. Plaintiff argued that dismissal with prejudice was an inordinately harsh remedy for failure to answer interrogatories. The appellate court agreed that the remedy of dismissal with prejudice was perhaps excessive, but the court held "that questions going to the propriety of * * * dismissal * * * are now foreclosed * * *." 331 F.2d at 126–127. The Court also said:

"We are thus constrained to hold that Judge Bryan's dismissal of Nasser's first complaint acted as a bar to the identical causes of action asserted here, and that questions relating to the propriety of that earlier dismissal which clearly could have been litigated in that action if raised in a proper and timely manner are now foreclosed. But even if this result were not required by the terms of Rule 41(b), it would seem necessary as a matter of sound judicial administration."

" * * * In the light of so sad a history of dilatory conduct, a holding that Nasser may simply ignore his default and the court's order and judgment—as if they did not exist—and now raise the same claims that were dismissed by Judge Bryan would be to place a premium on default, carelessness and callousness to duty, and would tend to consign the procedural rules designed for expedition in litigation to oblivion. If this conduct were

reversal of the pre-rules doctrine that a judgment without consideration of the merits was without prejudice so that a plaintiff could sue again. Peardon v. Chapman, 169 F.2d 909 (3d Cir. 1948). The rule effectuates the policy by giving to a judgment of involuntary dismissal *operative effect* as a dismissal on the merits *even though the merits were not reached, unless the judgment otherwise specifies.*[10] It ends arguments—such as in this case—over whether a dismissal was or was not upon the merits by giving effect to the judgment of dismissal dependent upon what it says on its face. If a party claims that the judgment of dismissal is erroneous because there is no specification on the face, or because there is an erroneous specification, the remedy to correct the judgment is by direct appeal, e. g., Link v. Wabash R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), Tademy v. Scott, supra, Safeway Stores v. Fannan, 308 F.2d 94 (9th Cir. 1962), Smith v. Ford Gum & Machine Co., 212 F.2d 581 (5th Cir. 1954), Peardon v. Chapman, supra, or by a motion under Rule 60, Fed.R.Civ.P. The terms of an involuntary dismissal under Rule 41(b) are in the discretion of the trial court, reversible only for abuse of discretion. See Peardon v. Chapman, supra, in which on direct appeal such abuse was found and the dismissal directed to be without prejudice, and Link v. Wabash R. Co., supra, in which on direct appeal no abuse was found.

There can be no doubt what "dismissed with prejudice" means in the federal system. It is a final judgment barring a second suit between the same parties on the same cause of action. "Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action by the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this." Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1964). "So long as it stands this dismissal with prejudice is res judicata and effectually bars any effort, in any court, at any time to find out what the true facts were." Shull v. Pilot Life Ins. Co., 313 F.2d 445, 446 (5th Cir. 1963). Accord, A. B. Dick Company v. Marr, 197 F.2d 498 (2d Cir. 1952), cert. denied, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); Esquire, Inc., v. Varga Enterprises, Inc., 185 F.2d 14, 17 (7th Cir. 1950); Cleveland v. Higgins, 148 F.2d 722, 724 (2d Cir. 1945); Creek Indians National Council v. Sinclair Prairie Oil Co., 142 F.2d 842 (10th Cir.) cert. denied 323 U.S. 781, 65 S.Ct. 269, 89 L.Ed. 624 (1944); Olsen v. Muskegon Piston Ring Co., 117 F.2d 163 (6th Cir. 1941).

The district court in the second suit, and the majority in this court, on a collateral attack, escape the effect of Rule 41(b) by doing precisely what that rule precludes. They have gone behind the affirmative specification on the face of the final judgment[11] to examine what

---

condoned, litigants or their counsel could turn a deaf ear to the processes of the court with impunity, suffering dismissals only to arise phoenix-like in new actions based on the same allegations which the plaintiff years prior failed to litigate. In a judicial system operating within a framework of rules created 'to secure the just, speedy, and inexpensive determination of every action' such a situation is patently intolerable." 331 F.2d at 128.

10. Compare the former practice in admiralty by which under Admiralty Rule 38, a dismissal (for failure to prosecute) was deemed to be without prejudice unless affirmatively specified to be with prejudice. Prol v. Holland-America Line, 234 F.Supp. 530 (S.D.N.Y.1964).

11. A better argument can be made for going behind a judgment of dismissal which is silent as to whether with or without prejudice than for going behind an affirmative specification. Nevertheless with almost complete uniformity the courts have declined to do so. Kern v. Hettinger, 303 F.2d 333 (2d Cir. 1962); Bartch v. Chamberlain Company of America, Inc., 266 F.2d 357 (6th Cir. 1959); Nasser v. Isthmian Lines, supra. In American Nat. Bank & Trust Co. v. United States, 79 U.S.App.D.C. 62, 142 F.2d 571 (1944), the court declined to consider an affidavit offering a certificate of the local judge that the case was not considered on its merits, pointing out that in any event the certificate would be to a "fact * * * legally

was adjudicated, and thence to conclude the first judgment did not mean what it specified. But to avoid Rule 41(b) this was only half the route, for the order of involuntary dismissal silent as to effect is a bar. Hence having stricken what the first judgment did say they have substituted the opposite as an affirmative recital in its stead and say that the judgment "otherwise specified." So far as I can determine no other court has ever done this. Compare Panza v. Armco Steel Corp., 316 F.2d 69 (3d Cir.) cert. denied 375 U.S. 897, 84 S.Ct. 174, 11 L. Ed.2d 125 (1963); Creek Indians National Council v. Sinclair Prairie Oil Co., supra.

In Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) the question presented to and ruled on by the Supreme Court was "whether the present proceeding was barred by the order of the District Court dismissing the earlier proceeding * * * *without specifying whether the dismissal was* with or without prejudice." (Emphasis added). 365 U.S. at 284, 81 S.Ct. at 544, 5 L.Ed.2d at 564. Costello considered the scope of the "lack of jurisdiction" exception to Rule 41(b) dismissals which operate on the merits unless otherwise specified. It was not concerned with rewriting on collateral attack dismissals which specify that they do operate on the merits.[12] In fact petitioner's contention in that case was limited to the factual situation of a dismissal which "did not specify that it was without prejudice."

Rule 41(b) establishes sensible ground rules for the effect of involuntary dismissals without regard to whether on the merits. Circumvention of the rule does not make a decision on the merits less than what it is. This was a trial on the merits, and the majority opinion so acknowledges. Under the law of guaranty demand is a part of the cause of action and not a sort of felicitous convenience.[13] Demand was alleged, denied,

irrelevant," and "useless to the appellant," since the dismissal order, which was for want of prosecution, did not "otherwise specify" hence necessarily was operative as an adjudication upon the merits.

See also Hickey v. Johnson, 9 F.2d 498, 501 (8th Cir. 1925), and Fowler v. Osgood, 141 F. 20, 24, 4 L.R.A.,N.S., 824 (1905) holding:

"A general judgment or decree of dismissal, without more, renders all the issues in the case res adjudicata and constitutes a bar to any subsequent suit for the same cause of action. Hence, when a court dismisses a suit upon some ground which does not go to the merits of the cause of action, but leaves them open to consideration in another court, or at another time, or in another way, the decree of dismissal must expressly adjudge that it is rendered for the specific reason upon which it is based, or must expressly provide that it is made without prejudice."

and Mas v. Coca Cola Co., 198 F.2d 380, 381 (4th Cir. 1952), holding that "the dismissal of the former suit * * * operates as an estoppel upon plaintiff on the principal [sic] of res judicata, since the court in its order of dismissal did not provide that it should not so operate."

12. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) relied on by the majority, has to do with construing an order dismissing a suit for declaratory judgment. The suit alleged unconstitutionality of a state statute. Since the court made a declaration that the statute was constitutional the dismissal was held to be in effect a declaratory judgment, thus presenting an issue of whether declaratory judgment could be used against a state officer to prevent enforcement of a state tax statute. This has nothing to do with Rule 41(b) or with the policy that involuntary dismissals end litigation except in specific circumstances. The construction was not in derogation of the res judicata effect of the judgment.

Obviously the New Jersey state court case followed by the majority cannot authorize federal courts to depart from their rules.

13. As already referred to above, compare the precondition described in *Costello*, of a failure by plaintiff which did not put the defendant to the necessity of preparing a defense or defending on the merits. The appellant before us is wholly outside the situation described in *Costello*, where "the failure of the [plaintiff] * * * does not present

and litigated over, even to the extent of the government's unsuccessful contention that necessity of demand was dispensed with because appellant allegedly had thwarted demand by concealing her whereabouts.

The result reached by the majority violates the substantive law of res judicata and both the provisions and the policy of Rule 41(b). I respectfully dissent.

a situation calling for application of the policy making dismissals operative as adjudications on the merits." 365 U.S. at 287, 81 S.Ct. at 546, 5 L.Ed.2d at 556. She had to prepare her defense, defended, and won. The government sought to win on the facts—demand by letter, and on the law—suit as a demand. It lost on both theories, and neglecting to take the appeal which it asserts to us that it surely would have won put the defendant to trial a second time.